**BASF CORPORATION, Plaintiff,**

v.

**The OLD WORLD TRADING COMPANY, Defendant.**

**No. 86 C 5602.**

United States District Court, N.D. Illinois, E.D.

Aug. 30, 1993.

---

**MEMORANDUM OPINION AND ORDER**

LEINENWEBER, District Judge.

### I.  INTRODUCTION

This memorandum addresses the most recent skirmish in a protracted legal battle which the parties first joined in 1986.  Plaintiff, BASF Corporation ("BASF"), brought suit against defendant, The Old World Trading Company ("Old World"), under the Lanham Trade–Mark Act, 15 U.S.C. § 1117 ("Lanham Act"), and the Illinois Consumer Fraud and Deceptive Business Practices Act,

Ill.Rev.Stat., ch. 121½, ¶ 261 *et seq.* After a bench trial, plaintiff was awarded damages totaling $2,498,726, significantly less than the amount plaintiff originally sought. On September 11, 1992, the court awarded plaintiff $272,860.71 in costs. Plaintiff is now before the court seeking attorney's fees in the amount of $4,059,677 plus prejudgment interest on the attorney's fees. Plaintiff subsequently filed a Supplemental Petition for Fees seeking recovery in the amount of $35,332.50 for fees incurred between the cut-off date for fees and its filing of the Fee Petition.

## II. BACKGROUND

Plaintiff's original request for fees can be divided into two major categories: attorney's fees and "out of pocket litigation expenses." The two categories themselves can be further broken down as follows:

### ATTORNEY'S FEES

| | |
|---|---|
| Baker & McKenzie | $1,929,107 |
| Pennie & Edmonds | 58,436 |

### OUT OF POCKET LITIGATION EXPENSES

| | |
|---|---|
| Paralegal Fees | $ 376,775 |
| Expert Witnesses | |
| Coopers & Lybrand | $ 856,172 |
| Dennis Dugan | 297,947 |
| Russel Fay | 52,258 |
| LEXIS | $ 384,506 |
| Travel Expenses | $ 77,028 |
| Long Distance Telephone | $ 19,247 |
| Postage | 3,930 |
| Messenger | 4,271 |
| | |
| TOTAL | $4,059,677 |

Rather than attack individual receipts and billing practices of plaintiff, a task which would be extremely arduous for defendant in a long, detailed case such as this (and equally arduous for the court to review), defendant has raised five major challenges to plaintiff's fee petition.

First, defendant contends that plaintiff is not entitled to the $1,206,377 in witness fees under the Lanham Act. Second, defendant argues that plaintiff should be denied the $58,436 it seeks in attorney's fees for work done by the firm of Pennie & Edmonds, on

the ground that such recovery is inconsistent with plaintiff's chief legal counsel's professed expertise in the matters involved in this litigation.[1] Third, defendant argues that plaintiff's LEXIS expenses (money expended for the creation and operation of a private computerized database) should be disallowed because such expenses are not related to legal research, are not legal fees, and are duplicative of costs already awarded plaintiff by the court. Fourth, defendant contends that plaintiff should not be awarded prejudgment interest on the attorney's fees. Finally, defendant contends that the court should discount attorney's fees because of plaintiff's alleged attempt to bankrupt defendant. Defendant supports its arguments that the Fee Petition submitted by plaintiff should be whittled down by applying the "sampling method" to some of the fees sought by plaintiff. Defendant argues that its sampling of plaintiff's fees reveals the unreasonableness of the Fee Petition.

The court now turns its attention to each of these arguments.

## III. ANALYSIS

### A. Expert Witness Fees

Plaintiff argues that it is entitled to $1,206,377 in expert witness fees under the Lanham Act. Plaintiff argues that the award of such fees is necessary "to effectuate the equitable relief fashioned by this court."

The Lanham Act, however, does not explicitly provide for the award of witness fees. The Lanham Act states, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). There is no mention of recovery for expert witness fees in any part of section 1117, which specifically allows for damages and costs in addition to attorney's fees.

Defendant, relying on the Supreme Court's decision in *West Virginia University Hosp., Inc. v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), argues that this failure specifically to permit the recovery of expert

---

1. The firm of Baker & Mckenzie was plaintiff's chief legal counsel in this case.

witness fees means that such fees are not recoverable under the Lanham Act.

In *West Virginia University Hosp.*, West Virginia University Hospital ("WVUH") filed suit in federal court against the Governor of Pennsylvania under 42 U.S.C. § 1983. WVUH challenged the Medicaid reimbursement schedules promulgated by the Commonwealth of Pennsylvania for services provided by WVUH to Pennsylvania residents.

WVUH prevailed at trial and the district court awarded fees in accordance with 42 U.S.C. § 1988. *West Virginia University Hosp., Inc.*, 499 U.S. 83, 86, 111 S.Ct. 1138, 1140. Included in these fees was more than $100,000 in "fees attributable to expert services." *Id.* The Third Circuit disallowed the recovery of the expert fees save to the extent that they "fell within the $30–per–day fees for witnesses prescribed by 28 U.S.C. § 1821." *Id.* The *West Virginia* court affirmed the decision of the Third Circuit.

The *West Virginia* court noted that while section 1988 was a fee shifting provision, it referred only to "attorney's fees" and made no mention of expert witness fees. *Id.* 499 U.S. at 88, 111 S.Ct. at 1141. This was in contrast to 34 statutes in ten different titles of the United States code identified by the Court, a number of which were enacted or amended around the same time that section 1988 was enacted, which "explicitly shift attorney's fees and expert witness fees." *Id.* 499 U.S. at 89, 111 S.Ct. at 1142.

The *West Virginia* court relied on its earlier decision in *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), in coming to its decision. In *Crawford*, the Supreme Court held that 28 U.S.C. §§ 1821(b) and 1920(3) "define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further." *West Virginia*, 499 U.S. at 86, 111 S.Ct. at 1141. The *Crawford* court held, "[w]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limits of § 1821(b), absent contract or explicit statutory authority to the contrary." *Crawford Fitting Co.*, 482 U.S. at 439, 107 S.Ct. at 2496.

Section 1821(b) provides that in regard to witness fees authorized under 28 U.S.C. § 1920(3), "[a] witness shall be paid an attendance fee of $40 per day of each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance."

Plaintiff argues that the Supreme Court's decision in *West Virginia* was limited to section 1988 and thus does not preclude the award of expert witness fees under the Lanham Act. The court disagrees with plaintiff's interpretation of *West Virginia*. True, the *West Virginia* court specifically addressed the issue of whether expert witness fees were recoverable under section 1988 and did not interpret the Lanham Act. However, in unequivocally ruling that expert witness fees were not recoverable under section 1988, the Supreme Court provided this and all other courts with a methodology which may be used to analyze claims for expert witness fees brought under other fee shifting statutes. The statute at issue in this case, the Lanham Act, provides for the shifting of attorney's fees from the prevailing to the losing party. However, the Lanham Act, like section 1988, makes no mention of expert witness fees. The Supreme Court in *West Virginia* clearly stated that "statutory usage" showed "beyond question that attorney's fees and expert fees are distinct items of expense." *West Virginia*, 499 U.S. at 92, 111 S.Ct. at 1143. Where Congress has repeatedly drafted statutes that explicitly provide for the shifting of both attorney's fees and witness fees, courts should not read statutes which explicitly provide for only the shifting of attorney's fees also to shift expert witness fees. Applying this rationale to the case at bar, the court will not read the Lanham Act, which specifically permits the shifting of attorney's fees, to also allow the shifting of expert witness fees.

Plaintiff's attempts to distinguish *West Virginia* from the case at bar are unavailing. Plaintiff argues that if the *West Virginia* court wished to extend its holding "to all cases where a fee shifting statute does not explicitly provide for the shifting of 'expert witness fees' it clearly could have done so."

Plaintiff's Reply Brief, 12. The court finds such logic unpersuasive. The issue before the *West Virginia* court was whether expert witness fees were recoverable under the provisions of one fee shifting statute, 42 U.S.C. § 1988. The issue of the recoverability of witness fees under other statutes was not before the court and the court correctly limited its opinion to the issue presented. However, as stated above, in rendering its decision, the *West Virginia* court provided a means of analyzing whether witness fees are recoverable under other fee shifting statutes.

Plaintiff also argues that the Supreme Court's opinion in *West Virginia* does not control here because the case it relied on in reaching its conclusion, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), is inapposite to the case at bar. Plaintiff contends that the *Crawford* court did not reach the question of a "federal court's power to shift expert fees in cases where there was specific statutory authority providing for the shifting of fees." Plaintiff's Reply Brief, 11. *Crawford* was a consolidated case where the Supreme Court considered district courts' ability to shift witness fees in cases where there were no fee shifting statutes. The authority that one of the lower courts had relied on in shifting witness fees was Federal Rule of Civil Procedure 54(d). *Crawford*, 482 U.S. 437, 439, 107 S.Ct. 2494, 2496, 96 L.Ed.2d 385 (1987). Consequently, plaintiff argues that the *Crawford* decision "does not apply to a situation where, as in the instant case, a court awards fees pursuant to a specific statute." Plaintiff's Reply Brief, 11.

This is at best sophistry. The relevant precedent here is that of *West Virginia*, not *Crawford*. While *Crawford* did not involve a fee shifting statute, *West Virginia* did. As previously indicated in *West Virginia*, the Supreme Court utilized the reasoning of *Crawford* to determine whether expert witness fees could be shifted where there was a statute (42 U.S.C. § 1988) which provided for the shifting of attorney's fees. In the instant case, the court is presented with a statute that allows for the shifting of attorney's fees but makes no mention of expert witness fees.

Plaintiff also argues that the instant case is more similar to *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), than *West Virginia*. In *Jenkins*, the Supreme Court permitted a prevailing party to recover its paralegal's fees under the rubric of attorney's fees. The *Jenkins* court reasoned that paralegals often do work that attorneys normally do and, consequently, paralegals help reduce the costs of litigation. Plaintiff argues that expert witnesses also help reduce the costs of litigation by performing tasks that lawyers perform, but at a lower cost.

The court rejects this argument for a number of reasons. First, when carried to its logical conclusion, this argument would render any individual or entity that performs a task that an attorney might, and that reduces litigation costs an "attorney" for the purposes of the phrase "attorney's fees." The court declines to open that undoubtedly expensive Pandora's box. Second, plaintiff's argument ignores the ruling of the *West Virginia* court that statutory usage in dozens of laws "shows beyond question that attorney's fees and expert fees are distinct items of expense." *West Virginia*, 499 U.S. at 92, 111 S.Ct. at 1143. Third, and most convincing to the court, the Supreme Court rejected this argument in *West Virginia*. The *West Virginia* court, in declining to subsume expert witness fees within the phrase "attorney's fees" as the *Jenkins* court had done with "paralegal fees,", noted that "[i]t was not remotely plain in *Jenkins* that the phrase 'attorney's fee' did not include charges for law-clerk and paralegal services." *West Virginia*, 499 U.S. at 99, 111 S.Ct. at 1147. The *West Virginia* court stated:

> There was no record in *Jenkins*—as there is a lengthy record here—of statutory usage that recognizes a distinction between the charges at issue and attorney's fees.... In other words, *Jenkins* involved a respect in which the term "attorney's fees" ... was genuinely ambiguous; and we resolved that ambiguity by not invoking some policy that supersedes the text of the statute, but by concluding that charges of this sort had traditionally been included in attorney's fees, and that separate billing should make no difference.

*Id.* The *West Virginia* court concluded that in the case before it there was no ambiguity regarding whether witness fees were included in the term "attorney's fees." They were not. Consequently, for the above reasons, the court rejects plaintiff's analogy to *Jenkins.*

Plaintiff also cites two district court cases where expert witness fees have been awarded under the Lanham Act. *Manildra Milling Corp. v. Ogilvie Mills, Inc.,* 797 F.Supp. 874, 889 (D.Kan.1992); *Conopco, Inc. v. May Dep't. Stores Co.,* No. 90–1475C(3), 1992 WL 554185, 1992 U.S.Dist. LEXIS 18614 (E.D.Mo.1992). However, the opinions of district courts are not binding on this court. *Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1124 (7th Cir.1987). Nor does this court find either decision persuasive. The *Manildra* opinion devotes a single sentence to the issue of expert witness fees, stating that Manildra was entitled to recover witness fees because witnesses were necessary in the case. *Manildra,* 797 F.Supp. 874, 889. The *Conopco* court awarded witness fees in accordance with its equitable power to do so. *Conopco,* 1992 WL 554185, *8, 1992 U.S.Dist. LEXIS 18614, *10.

The court does not find that the Lanham Act mandates the award of witness fees in addition to attorney's fees. The court also declines to invoke its equitable power to authorize the shifting of expert witness fees. Consequently, the court will not award witness fees beyond that permitted by 28 U.S.C. §§ 1920 and 1821, and granted in the court's Memorandum and Opinion Order of September 11, 1992.

### B. Attorneys Fees for the Firm of Pennie & Edmonds

■ . Defendant argues that plaintiff should not be awarded attorney's fees for the work done in this case by the law firm of Pennie & Edmonds. Plaintiff retained this firm to advise and assist its primary legal counsel on matters pertaining to the Lanham Act.

Defendant contests these charges on two grounds. First, defendant argues that the firm of Pennie & Edmonds has submitted invoices for "unnecessary and unwarranted charges" (*i.e.,* for the preparation of jury instructions where plaintiff failed to make a jury demand). Second, and more important, defendant is opposed to the award of fees for the work done by the firm Pennie & Edmonds because the retention of the firm undercuts the claim of plaintiff's chief legal counsel, Baker & McKenzie, that it is an expert in Lanham Act claims.

Defendant cites no authority to support its position. The court notes that Baker & McKenzie retained the services of Pennie & Edmonds because a partner in that firm is an expert on the Lanham Act. Plaintiff is not barred from putting together as expert a legal team as possible. Nor is it barred from recovering attorney's fees under the Lanham Act for retaining more than one law firm. Consequently, the court will not automatically disallow the costs associated with the firm of Pennie & Edmonds. The court will consider defendant's other objections to the work done by Pennie & Edmonds in a manner consistent with section "E" of this memorandum.

### C. LEXIS Database

Plaintiff seeks $384,506 for a privately-prepared computerized database of documents. The database was created by LEXIS and was designed to create an "extremely cost-efficient means of searching for and retrieving relevant documents." Plaintiff's Reply Brief, 17.

■ Plaintiff argues that these fees are recoverable because the investment in the database resulted in the saving of time and money to plaintiffs because plaintiff was spared having to find and retrieve documents manually. Plaintiff analogizes to *Missouri v. Jenkins,* 491 U.S. 274, 286, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989), arguing that if paralegals' fees are recoverable as attorney's fees, these database costs should also be considered as attorney's fees because, like paralegals, the database saves time and costs for law firms. Plaintiff also cites *Matter of Continental Ill. Securities Litigation,* 962 F.2d 566 (7th Cir.1992), in support of the proposition that LEXIS legal research costs are recoverable.

The court concedes that legal research costs incurred using a computerized research system such as LEXIS are recoverable. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir.1991). However, in the instant case, plaintiff is not seeking costs associated with actual legal research. Rather, plaintiff seeks to recover the costs for the development of a computerized document recovery system. The court finds that the rationales cited by the Seventh Circuit for the reimbursement of the costs associated with computerized research are not applicable here.

The *Continental Ill.* court cited two reasons for allowing attorneys to recover their LEXIS costs. First, the court argued that disallowing LEXIS research costs and treating them as part of attorneys' overhead it would have the effect of increasing the hourly rates charged by attorneys, requiring an adjustment of the lodestar.

The second reason and "more important point" according to the Seventh Circuit is that:

> [T]he market—the paying, arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just as it reimburses their paralegal expenses, rather than require these items be folded into overhead. Markets know market values better than judges do. And, as with paralegals, so with computerized research: if reimbursement at market rates is disallowed, the effect will be to induce lawyers to substitute their own, more expensive time for the paralegal or the computer.

*Continental Ill.*, 962 F.2d at 570.

Plaintiff here, however, is not seeking the recovery for the costs of time spent by its attorneys conducting legal research. Rather, it is seeking recovery of the cost of designing and constructing a system which allowed its attorneys to identify and locate documents more efficiently. While the *Continental Ill.* court disapproved of viewing attorneys' legal research costs as "overhead costs," in this case, the creation of the database, which was done outside the law firm, is appropriately considered overhead. It is comparable to a law firm's investment in a word processing system. A word processing system, too, allows attorneys greater efficiency in their work. However, the costs of purchasing and installing a word processing system would not be recoverable as fees.

The court also rejects the analogy between paralegals and the cost of the LEXIS system. The fact that the database and paralegals may save law firms money and time is immaterial. Paralegals often do work which in their absence would be done by attorneys. As such, they can be seen as replacements or stand-ins for attorneys. Consequently, there is a certain logic to the *Jenkins* decision awarding paralegal fees as attorney's fees. The database, on the other hand, does not do any work for attorneys but rather is a system for improving office efficiency. Therefore, as stated earlier, the LEXIS database is more accurately seen as a part of Baker & McKenzie's overhead, such as that firm's word processing or computer system.

The court will not allow plaintiff to recover the cost of developing its LEXIS document recovering system.

## D. Prejudgment Interest

Plaintiff seeks prejudgment interest on its attorney's fees. The court, in accordance with the teachings of this Circuit, has awarded plaintiff prejudgment interest on its damages. This Circuit has declared that where a violation of federal law is found, there is a presumption that prejudgment interest should be awarded on the damages. *Gorenstein Enterprises v. Quality Care*, 874 F.2d 431, 476 (7th Cir.1989).

The award of prejudgment interest on attorney's fees is a matter within the discretion of the district court. In the cases cited by defendant in opposing the awarding of prejudgment interest on attorney's fees, there was no *per se* prohibition against the award of such interest. Rather, the courts found that the award of interest was either inappropriate or inequitable given the circumstances of the case. *See Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646 (1985) (interest rate adjustment to prevailing party's attorney's fees not appropriate where attorneys reimbursed on an hourly basis, however, plaintiff could be compensated for inflation); *Sands, Taylor & Wood Co. v. The*

*Quaker Oats Co.*, No. 84 C 8075, 1991 WL 128071, 1991 U.S.Dist. LEXIS 9246 (N.D.Ill. July 9, 1991) (award of attorney's fees would be inequitable).

■ The court has decided not to award plaintiff prejudgment interest on its attorney's fees in this case. Prejudgment interest on attorney's fees has been found appropriate where attorneys are operating on a contingency basis and have been "out of pocket" for the duration of the litigation. *See Ohio–Sealy*, 776 F.2d 646, 663 n. 17 (7th Cir.1985); *In re Continental Ill.*, 962 F.2d 566 (7th Cir.1992). This Circuit has also found that attorneys should be compensated for inflation where there has been a delay in receiving their fees, and where attorneys charged their clients a rate below their customary rate because such a fee structure placed them in a position "similar to that occupied by attorneys who accept representation on a contingency basis." *Fleming v. County of Kane*, 898 F.2d 553, 564 (7th Cir.1990). Neither circumstance applies here.

In the instant case, the attorneys were paid on an hourly basis and did not take this case on a contingency. In addition, plaintiff's attorneys admit that they have already received payment for their work. Plaintiff's attorneys point out, however, that it is BASF that will receive the attorney's fees and pre-judgment interest awarded in this case and not their law firm. Consequently, plaintiff's attorneys argue it is immaterial that the attorneys working on this case have been paid regularly. What is important, plaintiff's attorneys continue, is that BASF recover the true value of the dollars it has expended over the life of this case. A dollar handed to BASF today does not adequately compensate BASF for a dollar BASF expended on attorney's fees in 1986.

■ While this last sentence is undoubtedly true, the court declines to exercise its discretion and award prejudgment interest on the attorney's fees in this case. While 1993 dollars cannot recompense plaintiff completely for its earlier expenses, BASF was not "out of pocket" in its attorney's fees in this case until the court ruled that the case was "exceptional" on May 21, 1992. *Howes v. Med. Components, Inc.*, 761 F.Supp. 1193,

1201 (E.D.Pa.1990). It was on May 21, 1992, that the court ruled that plaintiff was entitled to "at least some of BASF's attorney's fees" because the case was "exceptional." Court's Findings of Fact and Conclusions of Law, 34, May 21, 1992. Under the Lanham Act, prevailing parties are not awarded attorney's fees as a matter of course. In order for a prevailing party to receive attorney's fees, the case must be found to be exceptional. 15 U.S.C. § 1117. Exceptional cases are those where the acts of infringement are malicious, fraudulent, deliberate or wilful. *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 746 (7th Cir.1985).

■ Consequently, until the instant case was found to be "exceptional," plaintiff had no expectation that its attorney's fees would be reimbursed if it prevailed in the case, and was not "out of pocket" until such a determination was made.

E. Reduction of Attorney's Fees

In addition to the above discussed objections to expert fees under the Lanham Act, the fees for the work done by the firm of Pennie & Edmonds, LEXIS expenses, and pre-judgment interest on attorney's fees, defendant also argues that plaintiff's attorney's fees should be decreased. Defendant argues that plaintiff incurred much of its attorney's fees in an effort to bankrupt defendant and, therefore, such fees are excessive and not recoverable. Second, defendant argues that BASF's fees should be reduced because BASF has been found guilty of disparaging Old World's product by "recklessly accusing Old World of using inferior quality glycol." Defendant also argues that plaintiff's fees should be reduced because of plaintiff's limited success in this action. Finally, defendant maintains that plaintiff's attorney's fees should be reduced because, as requested, the fees far exceed any other Lanham Act award.

Defendant, in an effort to illustrate its claim that plaintiff's attorney's fees are exaggerated, has "sampled" two of the tasks performed by plaintiff. Defendant requests that the court "extrapolate the reasonableness of the hours claimed for these tasks to the

whole of the litigation." The two tasks sampled by plaintiff are BASF's preparation of its Petition for Attorney's Fees and BASF's Motion to Amend Findings and to Alter or Amend the Judgment.

Plaintiff does not respond in detail to defendant's "sampling" but rather questions the selection of the tasks chosen for sampling, and attributes errors and a "willingness to attribute malice, dishonesty, or inefficiency to the records that have been produced, rather than draw the more reasonable inference that BASF's attorney's underdocumented their time."

The court acknowledges that plaintiff is entitled to attorney's fees in this case. The briefs to date, however, do not provide much assistance in determining the amount of attorney's fees to be awarded. Defendant cites plaintiff's alleged ill-will and dirty hands as rationales for reducing plaintiff's claim for attorney's fees. Plaintiff, naturally, denies such characterizations of its activities and argues that its attorney's fees are reasonable because 1) the client has already paid them, 2) they are comparable to Old World's fees and expenses, 3) they are consistent with standard published market rates, and 4) the case was a very difficult one in which to prevail.

Because of the complexity and duration of this case, it is impractical to expect either party, or the court, to sort through all of the bills and receipts for this litigation in coming to a conclusion regarding the amount of attorney's fees that should be awarded. Consequently, the court believes that sampling is an appropriate way of determining the appropriate attorney's fees in this case. Moreover, the Seventh Circuit has approved of this method in complex cases such as this. *Evans v. City of Evanston*, 941 F.2d 473, 476–77 (7th Cir.1991). However, the court feels that the tasks sampled by defendant to date are not representative of the work involved in this case because they involve tasks that occurred after the court rendered its verdict. Consequently, in accordance with the teachings of *Evans v. City of Evanston*, the court requests that both plaintiff and defendant meet and agree on the tasks that should be sampled in this case. *Id.* at 477.

The parties should also suggest two tasks that should be sampled from the work done by the firm of Pennie & Edmonds. The parties should return to the court so that a briefing schedule can be set for this issue. After briefs have been submitted by both parties, the court will determine the appropriate attorney's fees in this case. The court will also apply the results of the sampling to plaintiff's Petition for Supplemental Costs. In addition to the fees awarded based upon the sampling method, the court will also award plaintiff attorney's fees for its trial work. Consequently, plaintiff is instructed to specify the attorney's fees it seeks to recover from the trial in this case. Defendant, of course, may contest the reasonableness of plaintiff's request.

## IV. CONCLUSION

The court declines to award plaintiff expert witness fees under the Lanham Act and the costs associated with the creation of a new LEXIS database. The court also declines to award plaintiff prejudgment interest on its attorney's fees. Plaintiff and defendant are directed to identify pre-verdict tasks by both the Baker & McKenzie and Pennie & Edmonds law firms to be sampled so that a specific award of attorney's fees can be made. After agreeing on tasks to be sampled, the parties should return to the court so that a briefing schedule can be set for the sampling of the identified tasks. The court will rule on the amount of attorney's fees after considering the briefs submitted by the parties as well as plaintiff's summary of attorney's fees expended during the trial.

IT IS SO ORDERED.