CRAWFORD FITTING CO. ET AL. *v.*
J. T. GIBBONS, INC.

No. 86–322.   Argued April 29, 1987—Decided June 15, 1987*

---

*Together with No. 86–328, *Champion International Corp.* v. *International Woodworkers of America, AFL–CIO, CLC, et al.*, also on certiorari to the same court.

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, BLACKMUN, POWELL, STEVENS, O'CONNOR, and SCALIA, JJ., joined. BLACKMUN, J. filed a concurring opinion, *post*, p. 445. MARSHALL, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 445.

*Ernest P. Mansour* argued the cause for petitioners in No. 86–322. With him on the briefs were *Dando B. Cellini* and *Victoria Knight McHenry*. *Jeffrey A. Walker* argued the cause for petitioner in No. 86–328. With him on the briefs was *Miles Curtiss McKee*.

*William H. Block* argued the cause and filed a brief for respondent in No. 86–322. *James E. Youngdahl* argued the cause and filed a brief for respondents in No. 86–328.†

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In these two consolidated cases we address the power of federal courts to require a losing party to pay the compensation of the winner's expert witnesses. In No. 86–322, respondent J. T. Gibbons, Inc., sued petitioner Crawford Fitting Co. and other petitioners for alleged violations of the

---

†*James Robertson, Harold R. Tyler, Jr., Norman Redlich, William L. Robinson, Richard T. Seymour, Antonia Hernandez, E. Richard Larson, Steven L. Winter, Julius LeVonne Chambers,* and *Charles Stephen Ralston* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., et al. as *amici curiae* urging affirmance in No. 86–328.

antitrust laws. The District Court directed a verdict in favor of petitioners. 565 F. Supp. 167 (ED La. 1981), aff'd, 704 F. 2d 787 (CA5 1983). Petitioners then filed a bill of costs with the Clerk of that court, seeking reimbursement from respondent for over $220,000 in litigation expenses, including substantial expert witness fees. The District Court held that Federal Rule of Civil Procedure 54(d) granted it discretion to exceed the $30-per-day witness fee limit found in 28 U. S. C. § 1821(b). It accordingly awarded petitioners $86,480.70 for their expert witnesses. 102 F. R. D. 73 (ED La. 1984). En banc, the Court of Appeals for the Fifth Circuit reversed, holding that the limit of § 1821(b) controlled. 790 F. 2d 1193 (1986). In No. 86–328, respondent International Woodworkers of America (IWA) sued petitioner Champion International, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U. S. C. § 1981. After a trial on the merits, the District Court dismissed all of respondent's claims. Petitioner thereafter filed a bill of costs, including $11,807 in expert witness fees. The District Court declined to order respondent to reimburse petitioner for these fees to the extent they exceeded the $30-per-day limit. The en banc Court of Appeals for the Fifth Circuit affirmed, finding the limit set forth in § 1821(b) dispositive. 790 F. 2d 1174 (1986). We agree and hold that when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary.

In 1793 Congress enacted a general provision linking some taxable costs in most cases in federal courts to the practice of the courts of the State in which the federal court sat. Act of Mar. 1, 1793, § 4, 1 Stat. 333. This provision expired in 1799. Apparently from 1799 until 1853 federal courts continued to refer to state rules governing taxable costs. See *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 250 (1975). By 1853 there was a "great diversity

in practice among the courts" and "losing litigants were being unfairly saddled with exorbitant fees." *Id.*, at 251. Accordingly, Congress returned to the issue and comprehensively regulated fees and the taxation of fees as costs in the federal courts. The resulting 1853 Fee Act "was a far-reaching Act specifying in detail the nature and amount of the taxable items of cost in the federal courts." 421 U. S., at 251–252.

It provided, in part, "That in lieu of the compensation now allowed by law to attorneys, solicitors, . . . and . . . witnesses . . . in the several States, the following and no other compensation shall be taxed and allowed." Act of Feb. 26, 1853, 10 Stat. 161. The rate for witnesses was set at $1.50 per day. 10 Stat. 167. The sweeping reforms of the 1853 Act have been carried forward to today, "without any apparent intent to change the controlling rules." *Alyeska Pipeline, supra,* at 255. Title 28 U. S. C. § 1920 now embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party:

> "A judge or clerk of any court of the United States may tax as costs the following:
>
> "(1) Fees of the clerk and marshal;
>
> "(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> "(3) Fees and disbursements for printing and witnesses;
>
> "(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> "(5) Docket fees under section 1923 of this title;
>
> "(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."

The witness fee specified in § 1920(3) is defined in 28 U. S. C. § 1821:

"(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States . . . shall be paid the fees and allowances provided by this section.

.     .     .     .     .

"(b) A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."

Federal Rule of Civil Procedure 54(d) in turn provides in part: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." The logical conclusion from the language and interrelation of these provisions is that § 1821 specifies the amount of the fee that must be tendered to a witness, § 1920 provides that the fee may be taxed as a cost, and Rule 54(d) provides that the cost shall be taxed against the losing party unless the court otherwise directs.

Petitioners argue that since § 1920 lists which expenses a court "may" tax as costs, that section only authorizes taxation of certain items. In their view, § 1920 does not preclude taxation of costs above and beyond the items listed, and more particularly, amounts in excess of the § 1821(b) fee. Thus, the discretion granted by Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920. We think, however, that no reasonable reading of these provisions together can lead to this conclusion, for petitioners' view renders § 1920 superfluous. If Rule 54(d) grants courts discretion to tax whatever costs may seem appropriate, then § 1920, which enumerates the costs that may be taxed, serves no role whatsoever. We think the better view is that § 1920 defines the term "costs" as used in Rule 54(d). Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority

found in Rule 54(d). It is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party. One of the items enumerated in § 1920 is the witness fee, set by § 1821(b) at $30 per day.

We cannot accept an interpretation of Rule 54(d) that would render any of these specific statutory provisions entirely without meaning. Repeals by implication are not favored, and petitioners proffer the ultimate in implication, for Rule 54(d) and §§ 1920 and 1821 are not even inconsistent. We think that it is clear that in §§ 1920 and 1821, Congress comprehensively addressed the taxation of fees for litigants' witnesses. This conclusion is all the more compelling when we consider that § 1920(6) allows the taxation, as a cost, of the compensation of court-appointed expert witnesses. There is no provision that sets a limit on the compensation for court-appointed expert witnesses in the way that § 1821(b) sets a limit for litigants' witnesses. It is therefore clear that when Congress meant to set a limit on fees, it knew how to do so. We think that the inescapable effect of these sections in combination is that a federal court may tax expert witness fees in excess of the $30-per-day limit set out in § 1821(b) only when the witness is court-appointed. The discretion granted by Rule 54(d) is not a power to evade this specific congressional command. Rather, it is solely a power to decline to tax, as costs, the items enumerated in § 1920.

The logic of this conclusion notwithstanding, petitioners place heavy weight on a single sentence found in our opinion in *Farmer* v. *Arabian American Oil Co.*, 379 U. S. 227 (1964). In that case this Court held that the District Court had not abused its discretion in refusing to tax against the losing plaintiff the travel expenses of witnesses for the defendant. In the course of so ruling, the Court stated:

> "[T]he discretion given district judges [by Rule 54(d)] to tax costs should be sparingly exercised with reference to

> expenses not specifically allowed by statute." *Id.,* at 235.

Applying this language to the present case, petitioners argue that courts therefore have discretion to tax as costs expenses incurred beyond those specified by Congress as fees in § 1821, and made taxable by § 1920.

The sentence relied upon is classic *obiter:* something mentioned in passing, which is not in any way necessary to the decision of the issue before the Court. We think the dictum is inconsistent with the foregoing analysis, and we disapprove it.

The argument petitioners present today was squarely rejected in *Henkel* v. *Chicago, S. P., M. & O. R. Co.,* 284 U. S. 444 (1932). In that case, the Court held that federal courts have no authority to award expert witness fees in excess of the statutory limit set by Congress in the Fee Act of 1853. The Court's reasoning was straightforward:

> "Specific provision as to the amounts payable and taxable as witness fees was made by Congress as early as the Act of February 28, 1799 . . . . Under these provisions, additional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in cases in the federal courts.
>
> .      .      .      .      .
>
> ". . . Congress has dealt with the subject comprehensively and has made no exception of the fees of expert witnesses. Its legislation must be deemed controlling . . . ." *Id.,* at 446–447.

Petitioners contend that because *Henkel* was decided before the merger of law and equity in the federal courts, it is no longer good law. Petitioners' argument proceeds along the following lines: Prior to the adoption of the Federal Rules of Civil Procedure, federal courts could sit in law or in equity. In petitioners' view, courts sitting in equity had broad discretion to award fees not specified by statute. *Henkel,* decided

under this regime, held that courts at law had no power to exceed the limits set by statute. Now that the federal courts' legal and equitable powers are combined, petitioners conclude that *Henkel* cannot control the scope of a federal court's powers to exceed the limits set by statute.

We cannot agree. *Henkel* rested on statutory interpretation. Whatever the effect of the merger of law and equity in federal courts, it did not repeal any part of the Fee Act. Title 28 U. S. C. §§ 1920 and 1821, today's counterparts to the provisions of the Fee Act at issue in *Henkel*, are still law, and when not overridden by contract or explicit statutory authority, they control a federal court's power to hold a losing party responsible for the opponent's witness fees.

Our conclusion conforms to our prior interpretations of the 1853 Fee Act. In *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240 (1975), we considered the general role of the Act in federal courts. The Act "specif[ied] in detail the nature and amount of the taxable items of cost in the federal courts." *Id.*, at 252. The comprehensive scope of the Act and the particularity with which it was drafted demonstrated to us that Congress meant to impose rigid controls on cost-shifting in federal courts. Thus, we rejected an argument similar to the one posited by petitioners today: "Nor has [Congress] extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." *Id.*, at 260.

Although Congress responded to our decision in *Alyeska* by broadening the availability of attorney's fees in the federal courts, see the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U. S. C. § 1988, it has not otherwise "retracted, repealed, or modified the limitations on taxable fees contained in the 1853 statute and its successors." 421 U. S., at 260. Thus, we are once again asked to hold that a specific congressional enactment on the shifting of litigation costs is of no moment. We think that, as in *Alyeska*, Congress has made its intent plain in its detailed treatment of

witness fees. We will not lightly infer that Congress has repealed §§ 1920 and 1821, either through Rule 54(d) or any other provision not referring explicitly to witness fees. As always, "'[w]here there is no *clear* intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.'" *Radzanower* v. *Touche Ross & Co.*, 426 U. S. 148, 153 (1976), quoting *Morton* v. *Mancari*, 417 U. S. 535, 550–551 (1974) (emphasis added). Any argument that a federal court is empowered to exceed the limitations explicitly set out in §§ 1920 and 1821 without plain evidence of congressional intent to supersede those sections ignores our longstanding practice of construing statutes *in pari materia.* See *United States* v. *United Continental Tuna Corp.*, 425 U. S. 164, 168–169 (1976); *Train* v. *Colorado Public Interest Research Group*, 426 U. S. 1, 24 (1976).

We hold that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U. S. C. § 1821 and § 1920. The judgments of the Court of Appeals are affirmed, and No. 86–322 is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN, concurring.

I join the Court's opinion and its judgment but upon the understanding that it does not reach the question whether, under 42 U. S. C. § 1988, a district court may award fees for an expert witness. See *post*, at 446, n. 1 (MARSHALL, J., dissenting).

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

In these two cases, prevailing defendants sought reimbursement for expert witness fees pursuant to Federal Rule of Civil Procedure 54(d). The Rule provides that "[e]x-

cept when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." In No. 86–322, the District Court found that some of the expert testimony was "indispensable to the determination of [the] issues in the case" and taxed against the plaintiff the portion of witness fees attributable to that testimony. 102 F. R. D. 73, 86 (ED La. 1984). In No. 86–328, even though the District Court found the defendant's expert was "helpful and perhaps necessary to its case," the court declined to award fees in excess of the amounts specified in 28 U. S. C. § 1821. Civ. Action No. WC 78–33–WK–P (ND Miss., Aug. 24, 1983), p. 9.

The Court now informs us that the District Courts had no power to award costs not expressly authorized by statute.[1] In its haste to extinguish all discretion to award these nonstatutory costs, however, the Court has rendered Rule 54(d) a nullity.

Before today, it was generally recognized that the "unless the court otherwise directs" language in Rule 54(d) was in-

---

[1] I do not understand today's decision to decide the question whether a district court may award expert witness fees under 42 U. S. C. § 1988.

No. 86–322 is an antitrust case; obviously, § 1988 is not at issue in that case. And, as an examination of the record reveals, the issue is not properly before the Court in No. 86–328, either. In that case, petitioner, a prevailing civil rights defendant, made a motion for attorney's fees "and expenses" under § 1988 and filed a bill of costs under Rule 54(d). The bill of costs included $31,333.87 for "expert witness fees and expenses." Record 38. On December 30, 1982, the District Court summarily denied the motion for attorney's fees and expenses, based on its conclusion that, under *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412 (1978), "the lawsuit was brought in good faith and was neither frivolous, unreasonable, nor without foundation." Record 1. The court referred all other questions concerning the taxing of costs to a Magistrate. *Id.*, at 2. *Petitioner did not appeal the District Court's order denying attorney's fees under § 1988.* It appealed only the District Court's order of August 24, 1983, denying its application for expert witness fees under Rule 54(d). See Record 33.

tended as a grant of discretion to the district courts. See, *e. g.*, 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2665, p. 171 (2d ed. 1983). Except where expressly prohibited by statute from doing so, the Rule "vests in the district court a sound discretion over the allowance, disallowance, or apportionment of costs in all civil actions." 6 J. Moore, W. Toeggart, & J. Wicker, Moore's Federal Practice ¶ 54.70[5], p. 54–331 (2d ed. 1987). This is because Rule 54(d) adopts the practice formerly followed in equity, see 6 Moore ¶ 54.70[3], p. 54–321; 10 Wright § 2668, pp. 197–200, where courts possessed the power to award costs not expressly provided by statute, as "part of the original authority of the chancellor to do equity in a particular situation." *Sprague* v. *Ticonic National Bank*, 307 U. S. 161, 166 (1939) (footnote omitted). See generally *Newton* v. *Consolidated Gas Co.*, 265 U. S. 78, 83 (1924); *Ex parte Peterson*, 253 U. S. 300, 317–318 (1920).

Since the adoption of the Federal Rules, this Court has addressed the scope of the district courts' power to tax costs on only one occasion. In *Farmer* v. *Arabian American Oil Co.*, 379 U. S. 227 (1964), the Court held that a District Court acted within its discretion in refusing to tax a witness' expenses for travel in excess of 100 miles as costs against an unsuccessful plaintiff.[2] It expressly rejected the argument that a district court lacks the power to award these expenses as costs. The Court noted:

> "While this Rule could be far more definite as to what 'costs shall be allowed,' the words 'unless the court otherwise directs' quite plainly vest some power in the court to allow some 'costs.'" *Id.*, at 232.

---

[2] Under Federal Rule of Civil Procedure 45(e), a district court's power to compel attendance of witnesses extends only 100 miles. Relying on this Rule, District Courts had traditionally declined to tax as costs expenses of witnesses traveling more than 100 miles. See *Farmer* v. *Arabian American Oil Co.*, 379 U. S., at 231–232.

In a sentence labeled dictum by the majority, the Court sought to provide guidance to the lower courts by explaining that this discretion "should be sparingly exercised with reference to expenses not specifically allowed by statute." *Id.*, at 235. As Judge Rubin observed below, "[t]he Court's conclusion reveals its premise: Rule 54(d) gives the district court discretion to award costs not enumerated in § 1920." 790 F. 2d 1174, 1190 (CA5 1986) (en banc) (concurring and dissenting). This is certainly how Justice Harlan, author of the dissent in *Farmer*, viewed the case. See 379 U. S., at 240 ("the foundation of today's decision" is the "scope of the discretion of a district judge acting within his powers").

Rather than following *Farmer*, as it should, the majority relies on *Henkel* v. *Chicago, S. P., M. & O. R. Co.*, 284 U. S. 444 (1932). But *Henkel* provides no support for a restrictive interpretation of a district court's power to award fees under Rule 54(d). The opinion in *Henkel* addressed the narrow question whether district courts had authority to tax expert witness fees as costs *in an action at law*. At the time, courts of law lacked the power to award costs not expressly granted by statute, see *Ex parte Peterson, supra*, at 317–318, although those sitting in equity could award such costs, as justice required, without regard to the fee statutes. Approaching the issue purely as a matter of statutory construction, the Court concluded that expert witness fees were included in and limited to the amounts prescribed by the predecessors to 28 U. S. C. §§ 1920 and 1821. 284 U. S., at 446–447. The majority acknowledges, as it must, that *Henkel* was decided before the Federal Rules of Civil Procedure effected a merger of law and equity. What the majority ignores, however, is the vital significance of that fact. As noted above, Rule 54(d) adopts the practice in equity, thereby giving federal courts in all actions the broad discretion previously afforded only to courts exercising equitable powers.

The majority's assertion that discretion can be exercised only "to refuse to tax costs in favor of the prevailing party," *ante*, at 442, is plainly inconsistent with the equitable principles on which Rule 54(d) is based. Moreover, it reinforces the fact that the Rule is now entirely superfluous. Because the language of § 1920 is permissive — "[a] judge or clerk of any court of the United States *may* tax as costs the following" — courts already have discretion to disallow the costs listed therein.[3]

As the Court noted in *Farmer*, Rule 54(d) does not define "costs." 379 U. S., at 232. Seizing on this "omission," the Court now declares that § 1920 sets forth the universe of "costs" taxable under the Rule. *Ante*, at 441–442. Any contrary interpretation, it claims, "renders § 1920 superfluous." *Ante*, at 441. This misreads § 1920. That section does not purport to be exclusive. It does not direct that "the following costs *and no others* may be taxed."[4] By contrast, the predecessor to § 1920, the 1853 Fee Act, provided that "the following *and no other* compensation shall be taxed and allowed," Act of Feb. 26, 1853, 10 Stat. 161 (emphasis added); this language was omitted from the 1948 revision. Despite this seemingly significant deletion, the majority contends that "[t]he sweeping reforms of the 1853 Act have been carried forward to today, 'without any apparent intent to change the controlling rules.'" *Ante*, at 440, quoting *Alyeska Pipeline Co.* v. *Wilderness Society*, 421 U. S. 240, 255 (1975). In *Alyeska*, this Court held that the same fee statutes did not

---

[3]The legislative history of § 1920 supports this view of Rule 54(d). Congress replaced the mandatory language found in the earlier version — "*shall* tax costs" — to conform to the discretion afforded by Rule 54(d). See H. R. Rep. No. 308, 80th Cong., 1st Sess., App. A162 (1947) (Reviser's Note).

[4]Despite the majority's protestations, refusing to construe § 1920 as the exclusive definition of costs would not render the statute superfluous. Its principal purpose is to set forth those routine, readily determinable costs which, in ordinary cases, will automatically be taxed by the clerk of the court.

authorize recovery of attorney's fees by a prevailing party. Even in *Alyeska,* however, the Court recognized that the fee statutes had never been entirely exclusive: "To be sure, the fee statutes have been construed to allow, in limited circumstances, a reasonable attorney's fee to the prevailing party in excess of the small sums [for docket fees] permitted by § 1923." *Id.,* at 257.[5]

Not only is the Court's holding inconsistent with the language and history of Rule 54(d) and § 1920, but it is also ill advised as a policy matter. As Judge Rubin stated in his opinion below:

> "The costs of litigation, as we all know, have become staggering. A plaintiff may put a defendant or a defendant may put a plaintiff to a tremendous amount of expense, apart from the cost of obtaining an attorney's services, in defending or prosecuting a case. One cause of this expense is the unavoidable necessity of expert witness testimony to establish or rebut many legal claims.

> .        .        .        .        .

> "Although the victor in litigation is not entitled to spoils, he ought at least to be able to invoke the court's discretion to make him whole." 790 F. 2d, at 1192–1193.

For the foregoing reasons, I dissent.

---

[5] With respect to fees, *Alyeska* identified three circumstances appropriate for such "assertions of inherent power in the courts," *Alyeska Pipeline Co.,* v. *Wilderness Society,* 421 U. S., at 259: when the trustee of a fund preserved or recovered the fund for the benefit of others in addition to him or herself; when a party acted in willful disobedience to a court order; or when the losing party acted in bad faith or vexatiously. *Id.,* at 257–259.