Carrie JAFFEE, etc., et al., Plaintiffs,

v.

Hoffman Estates Police Officer Marylu REDMOND, et al., Defendants.

No. 91 C 4153.

United States District Court,
N.D. Illinois,
Eastern Division.

May 24, 1994.

Ronald Futterman, Kenneth Flaxman, Chicago, IL, for plaintiffs.

Gregory Rogus, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

After having prevailed at the trial of this civil rights action, plaintiffs have filed a timely motion for the award of attorneys' fees and expenses, requesting the sum of $309,-664.64 (reflecting a reduction of some $4,000 from the initially requested amount, in response to some of the objections interposed by defendants' response to the motion). This Court has now received not only defendants' response but also plaintiffs' reply memorandum, so that the motion has been fully briefed. But as this opinion reflects, some added work remains to be done in calculating the appropriate award.

■ To begin with, this Court rejects the principal bases that defendants have advanced in opposition to the hourly rates

sought by plaintiffs.[1] Despite defendants' arguments to the contrary, there is no anomaly involved in approving identical rates for plaintiffs' two lead lawyers, Ronald Futterman, Esq. ("Futterman") and Kenneth Flaxman, Esq. ("Flaxman"). Both are skilled attorneys of comparable experience. Defendants' contention that Futterman's enlistment of Flaxman as co-counsel because of the latter's special experience in 42 U.S.C. § 1983 ("Section 1983") litigation and other civil rights actions ought to result in a lower hourly rate for Futterman is totally unpersuasive. As plaintiffs' R.Mem. 2 states:

> It is ironic that defendants complain about Mr. Flaxman having been invited into the case because of his expertise in police misconduct litigation. Had Mr. Futterman not brought Mr. Flaxman into the case, defendants undoubtedly would be arguing that Mr. Futterman had spent too much time on the case because of his lack of experience in such cases.

Futterman is a skilled general litigator in his own right, and there is no reason that he should not be allowed his customary hourly rates—certainly the uncontroverted evidence tendered by plaintiffs confirms that his current rate (like Flaxman's) is in line with the prevailing market rate for lawyers of reasonably comparable skill, experience and reputation.

█ Having said that, however, this Court does find two problems with plaintiffs' presentation. As to all three of plaintiffs' lawyers (Futterman, Flaxman and Jennifer Soule ("Soule")), this Court rejects the application of current hourly rates as the numbers that should be applied across the board to the time spent by them. Although our Court of Appeals recognizes as acceptable the use of either (1) such current rates with no interest adjustment or (2) historic rates with an appropriate interest factor to reflect the delay in payment (*Smith v. Village of Maywood,* 17 F.3d 219, 221 (7th Cir.1994) and decisions cited there), this Court has long held and expressed the view that current rates are only a rough surrogate for a more precise calculation reflecting the cost of such delay (see the Appendix in *Lippo v. Mobil Oil Corp.,* 692 F.Supp. 826, 838–43 (N.D.Ill. 1988), this Court's first lengthy published discussion of the principles that it had been applying for a number of years). Against the clear analytical superiority of historical hourly rates plus interest compounded at the prime rate, as explained in detail in *Lippo,*[2] the only thing that an across-the-board application of current hourly rates has going for it is the minimally greater convenience of making only a single calculation for each lawyer.

In this case it seems especially inappropriate to focus on each lawyer's current hourly rates. Futterman's Aff. ¶ 5 reflects that his $275 hourly rate became effective less than six months ago, so the only services to which it actually applied were his shortly-before-trial preparation, his time spent during the trial itself (which took place in December 1993) and his part in the preparation of the petition for fees. Neither Flaxman nor Soule provides any information about his or her hourly rates that were applicable to the relevant periods beginning in October 1991 and continuing through the preparation of the fee petition.[3] Especially given the fact that the

---

1. Both sides have endorsed the lodestar approach (counsel's reasonable hourly rates × the reasonable number of hours spent by counsel), so this opinion will not pause on that subject. Instead it will address the several considerations that enter into the determinations of reasonableness.

2. To this Court's knowledge our Court of Appeals has not yet spoken to the issue whether the prime rate is the appropriate measure for the cost of delay in the receipt of attorneys' fees. In *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 436–37 (7th Cir.1989) Judge Posner explained why a calculation employing that rate (compounded) represented the right approach to the similar question of prejudgment

interest (the prevailing plaintiff's loss of the use of its money) under federal law. That suggestion was formally adopted by our Court of Appeals in *In re Oil Spill by the Amoco Cadiz,* 954 F.2d 1279, 1332 (7th Cir.1992); accord, *Partington v. Broyhill Furniture Industries, Inc.,* 999 F.2d 269, 274 (7th Cir.1993). Because the attorneys' fees issue involves precisely the same considerations (as set out pre-*Gorenstein* in *Lippo* ), this Court adheres to its previously-expressed position.

3. As to Soule, this Court has been provided with no information at all about her experience or background, to enable it to determine where she should be placed within the range of hourly rates applicable to time spent by associates. And to

last few years have been marked by low interest rates, the likelihood that the approach that this Court has consistently followed "is more straightforward" (see *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 571 (7th Cir.1992), elaborating on the reasons why that is so) is even more pronounced here.

Accordingly this Court will expect that the resubmission by plaintiffs' counsel called for by this opinion will provide the necessary information about the hourly rates of the respective participants throughout the period during which services were rendered, and will then apply those rates in the recalculation needed to reflect the other adjustments that will be ordered here. This opinion turns to those other adjustments.

Defendants have identified 30 specific items that they say illustrate the existence of duplicative effort or the expenditure of excessive time on the part of plaintiffs' counsel. Other tables attached to defendants' response reflect some other objections. This Court has engaged in an item-by-item review of all of defendants' objections and plaintiffs' responses. What follows is this Court's ruling as to all items that should properly be excluded from plaintiffs' request. To the extent that defendants' overridden objections are not specifically discussed here, that reflects only this Court's view that no such discussion is needed—the undiscussed objections are so clearly without merit that individualized treatment is unnecessary.

■ This Court has always been particularly critical of any party's multiple representation at routine court appearances. Jay Pritzker of the vast Pritzker enterprises (obviously speaking as a client, and not as the holder of his license to practice law) has sardonically commented that "Lawyers are like nuns—they travel in pairs." Whatever the validity of that criticism may be in general terms, it certainly applies to the situation just described. Accordingly Defendants' Objections 8 (Flaxman's 1.0 hours), 11 (Soule's 0.5 hours),[4] 18 (Soule's 0.4 hours), 23 (Flaxman's 1.5 hours and Soule's 1.0 hours)[5] and 24 (Soule's 2.8 hours) are disallowed for that reason.

■ That same concept of one lawyer for each routine court appearance also extends for the most part to the taking of each deposition with just one lawyer present for each side. On that score Defendants' Objections 15 (Soule's 4.7 hours[6]), 17 (Soule's 8.0 hours), 21 (Flaxman's 2.75 hours)[7] and 22 (Flaxman's 6.0 hours) are disallowed for that reason.

■ By contrast, defendants' Table 2 listing of a small amount of multiple billing for conferences among counsel does not justify any disallowance of those hours. This Court is equally sensitive to the need to avoid heaping Pelion upon Ossa by the endless interlawyer conference procedure that is always engendered by the overstaffing of any lawsuit. In this instance the 12 hours involved were plainly reasonable under the circumstances.[8]

---

the extent that paralegals' time (something over 280 hours) is included in the fee application, no information has been tendered to this Court about the appropriate hourly rate or rates (even though defendants have raised no question in that respect, it remains this Court's independent obligation to evaluate the entire fee request).

4. Although the text of plaintiffs' reply memorandum acknowledges their willingness to make that adjustment, it was mistakenly omitted from their ultimate calculation (R.Mem. 17). That should be corrected on plaintiffs' resubmission.

5. This is an item that P.R.Mem. 10–11 rejected, but that this Court finds appropriate. Again plaintiffs' resubmission should add that time to the excluded hours.

6. In fact Soule charged 6.7 hours for her attendance at that deposition. But P.R.Mem. 8 ex-

plains persuasively that if she had not been in attendance, she would have had to spend two hours in bringing Futterman up to speed on the information that Soule had earlier derived from the discovery previously obtained from defendants—a sensible division of labor between Soule and the higher-priced lead lawyers. Consequently the 4.7 hour net adjustment is appropriate.

7. That item, like the one described in n. 4, was inadvertently left out of the calculation reflected at P.R.Mem. 17. Once again the resubmission should correct that omission.

8. Table 3 was inserted by defendants simply for comparison—to show a number of instances in which a conference took place but the requested award covered only the time of one of the participants. As P.R.Mem. 15 points out, however, that really does not undercut the propriety of the

Similarly, defendants' Table 4 objection to some few items in the fee petition as insufficiently specific are also without merit. P.R.Mem. 15 provides a reasonable and satisfactory explanation of each of those items.

■ As for defendants' Table 5, which questions the presence of all three counsel during the trial itself, the nature and complexity of this case fully justified that activity. This lawsuit simply could not have been handled effectively by one lawyer—certainly the presence of both Futterman and Flaxman throughout the case was called for. And given the division of responsibility among counsel and Soule's usefulness in handling needed matters at the trial, her added presence was also reasonable. Only one in-trial item needs to be adjusted—the elimination of 6.0 hours of Flaxman's time on December 22, 1993 (a typographical error that has been acknowledged at P.R.Mem. 16).

P.R.Mem. 16 also reflects that the initial fee petition had inadvertently omitted the time spent by Futterman in connection with the fee petition itself. Although defendants have thus had no opportunity to address that matter, the time requested appears reasonable, and it will be allowed without further comment unless defendants' next response suggests some possible need for adjustment.

Finally, defendants have interposed a number of objections to some items of out-of-pocket expense. Plaintiffs have replied to those objections item by item (P.R.Mem. 17–19), and this Court agrees with plaintiffs in all respects (including the inapplicability of *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir.1990) (per curiam) as an asserted basis for eliminating Futterman's travel expenses to New Orleans[9]). Accordingly only plaintiffs' agreed-to adjustments, aggregating $429.76 in such expenses, will be made.

In sum, this Court grants plaintiffs' motion for an award of fees and expenses, but it requires plaintiffs to go back to the drawing boards for a requantification of that award. That required resubmission will obviously take some time to put together. Accordingly plaintiffs are ordered to tender their recalculation to opposing counsel and this Court on or before June 14, 1994, and defendants' response is ordered to be filed within two weeks after their counsel's receipt of plaintiffs' resubmission. Because of the nature of the adjustments that are called for here, no further fees on fees will be allowed to plaintiffs for the time spent by their counsel in connection with the resubmission.

---

items listed in defendants' Table 2—rather it reflects the carefulness of plaintiffs' request in having *avoided* excessive billing.

**9.** Even apart from the sharp factual distinction between the lack of need for the lawyer's presence at the deposition that was involved in *McIlveen* and the need for Futterman's presence at the New Orleans depositions in this case, it

should be noted that *McIlveen* posed a question of taxable *costs* (cabined by 28 U.S.C. § 1920, see *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–45, 107 S.Ct. 2494, 2497–99, 96 L.Ed.2d 385 (1987)), while what is at issue here is the far broader allowability of attorneys' fees and related out-of-pocket *expenses* under 42 U.S.C. § 1988.