**VERIZON TELEPHONE COMPANIES, et al.,**
**Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**WorldCom Inc., et al., Intervenors.**

**Nos. 01–1371 and 01–1379.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 10, 2002.

Decided June 18, 2002.

See also 205 F.3d 416.

Mark L. Evans argued the cause for petitioners. With him on the briefs were Michael K. Kellogg, Scott K. Attaway, David C. Frederick, Michael E. Glover, Edward Shakin, Joseph DiBella, Richard M. Sbaratta, James D. Ellis, Jeffrey B. Thomas and Gary L. Phillips. Roger K. Toppins entered an appearance.

John Rogovin, Deputy General Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were John E. Ingle, Deputy

Associate General Counsel, Laurence N. Bourne and Rodger D. Citron, Counsel, Catherine G. O'Sullivan and Nancy C. Garrison, Attorneys, U.S. Department of Justice.

David W. Carpenter argued the cause for intervenors American Telephone and Telegraph Company, et al. With him on the brief were Peter D. Keisler, James P. Young, Mark C. Rosenblum, Mark D. Schneider, John E. Benedict, H. Richard Juhnke, Charles C. Hunter, Catherine M. Hannan, Jonathan Jacob Nadler, Jason Oxman, Thomas F. O'Neil III, William Single IV, Teresa K. Gaugler, Rodney L. Joyce, Mary C. Albert and Morton J. Posner. David L. Lawson and Paul J. Zidlicky entered appearances.

Before: GINSBURG, Chief Judge, and RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Section 251(c)(6) of the Telecommunications Act of 1996 requires incumbent local exchange carriers to provide competitive local exchange carriers with space for the "physical collocation of equipment necessary for interconnection or access to unbundled network elements at [their] premises." Responding to our opinion in *GTE Service Corporation v. FCC*, which vacated the Federal Communication Commission's first order implementing section 251(c)(6) "insofar as it embrace[d] unduly broad definitions of 'necessary' and 'physical collocation,'" the Commission issued a new order, which petitioners now challenge. They argue that (1) the Commission's standard for collocatable equipment remains overly broad because it permits collocation of any equipment "necessary for interconnection or access" whether or not it is "necessary" to place such equipment "at the premises"; (2) the Commission unlawfully allowed the placement of switching and routing equip-

ment, as well as equipment containing multiple functions only some of which are "necessary" for interconnection or access to network elements; (3) the Commission lacks authority to order incumbents to physically connect collocating competitive local exchange carriers to each other; and (4) the Commission's space assignment rules are unlawful. Finding petitioners' claims either meritless or waived, we deny the petitions.

## I.

In order to foster competition for local telephone services, Congress, in the Telecommunications Act of 1996, authorized competitive local exchange carriers (CLECs) to place certain equipment within the premises of incumbent local exchange carriers (ILECs) so that CLECs could gain access to ILECs' networks. Specifically, section 251(c)(6) requires ILECs to "provide, on rates, terms, and conditions that are just, reasonable, and nondiscriminatory, for physical collocation of equipment necessary for interconnection or access to unbundled network elements at the premises of the local exchange carrier." 47 U.S.C. § 251(c)(6). The statute provides certain exceptions (not here relevant) for instances where an ILEC can demonstrate to a state commission that "physical collocation is not practical for technical reasons or because of space limitations." *Id.*

Based on this statutory authorization, the Commission issued an order entitled *Deployment of Wireline Services Offering Advanced Telecommunications Capability,* 14 F.C.C. Rcd. 4761, 1999 WL 176601 (1999), ("Collocation Order"), in which it outlined the types of equipment that may be collocated, established standards for the assignment of space within the ILEC's facilities, and fashioned rules allocating the initial costs of preparing collocation space.

A detailed summary of this Collocation Order appears in our decision in *GTE Service Corporation v. FCC*, 205 F.3d 416, 420 (D.C.Cir.2000). In that case, although we affirmed the Commission's cost allocation rule, we found defective its standards for the types of equipment collocatable and its space assignment rules. The flaws in the Commission's prior ruling fell into three categories, which we outline below together with the Commission's responses on remand. *See Deployment of Wireline Services Offering Advanced Telecommunications Capability*, 16 F.C.C. Rcd. 15,435, 2001 WL 893313 (2001) ("Remand Order").

*Equipment "necessary" for*
*interconnection or*
*access*

In *GTE*, we found "impermissibly broad," 205 F.3d at 424, the Commission's interpretation of the phrase "necessary for interconnection or access," which allowed collocation of any equipment " 'used or useful' for either interconnection or access to unbundled network elements, regardless of other functionalities inherent in such equipment," Collocation Order ¶ 28. The Commission's interpretation, we observed, "appear[ed] to permit competitors to collocate equipment that may do more than what is required to achieve interconnection or access." *GTE*, 205 F.3d at 423.

Responding to this criticism, the Commission now deems equipment "necessary" for purposes of section 251(c)(6) only "if an inability to deploy that equipment would, as a practical, economic, or operational matter, preclude the requesting carrier from obtaining interconnection or access to unbundled network elements." Remand Order ¶ 21. In crafting this new standard, the Commission rejected Verizon's argument that "necessary" modifies the phrase "physical collocation," reasoning that "such a reading would wrongly place [the] focus on whether 'collocation' of the equipment is necessary, ... as opposed to whether the equipment itself, *regardless of its location in the network*, is necessary for interconnection [or] access to unbundled network elements." Remand Order ¶ 25 (emphasis added) (internal quotation marks omitted).

In light of its new standard, the Commission also reexamined its treatment of switching and routing equipment. In the Collocation Order, the Commission expressly declined to require incumbents to collocate "equipment used exclusively for switching," finding insufficient support in the record for such a requirement. Collocation Order ¶ 30. At the same time, however, the Commission warned that it might "explore requiring such collocation in the future," *id.*—precisely what it did on remand from *GTE*. Benefitting from a "greatly expanded record ... reflect[ing] ... parties' several years of experience with the unbundled network access regime," the Commission reversed course, Remand Order ¶ 51, concluding that smaller, more modern switching and routing equipment may be entitled to collocation because it was "necessary" to "access an unbundled local loop's theoretical capability of providing a telecommunications service," *id.* ¶ 46. The Commission declined to allow collocation of older, traditional circuit switches, finding them unnecessary in light of the availability of smaller, more modern switches.

With regard to multi-functional equipment—i.e., "equipment that combines functions that meet [the] equipment standard with functions that would not meet that standard as stand-alone functions," Remand Order ¶ 32—the Commission now allows collocation if (1) the "primary purpose and function ... as the ... carrier seeks to deploy" the equipment are to provide interconnection or access to unbundled network elements; (2) any additional functions have a "logical nexus" to

that purpose; and (3) the additional functions do not "affect the demand on the incumbent's space and other resources so significantly as to increase the relative burden on the incumbent's property interests," *id.* ¶¶ 36–40.

### "Cross-connect" requirement

In *GTE,* we vacated the Commission's decision to allow CLECs to connect their equipment directly to that of other collocating carriers "subject only to the same reasonable safety requirements that the [ILEC] imposes on its own equipment." Collocation Order ¶ 33. The "obvious problem" with this so-called cross-connect requirement, we thought, was that it "impose[d] an obligation on [I]LECs that ha[d] no apparent basis in [a] statute [that] focuse[s] solely on connecting new competitors to [I]LECs' networks." *GTE,* 205 F.3d at 423. In its Remand Order, the Commission elected to maintain the cross-connect requirement, but in a modified form. Instead of allowing CLECs to provision (i.e., install and maintain) their own cross-connects, the Commission now requires ILECs to provision cross-connects upon request. Remand Order ¶ 62. The Commission imposed that requirement because "[i]f an incumbent ... refuses to provision cross-connects between [CLECs] collocated at the incumbent's premises, the incumbent would be the only LEC that could interconnect with all or even any of the [CLECs] collocated at a common, centralized point—the central office." *Id.* ¶ 63. In contrast, for two CLECs to exchange traffic without a cross connect,

> each [CLEC] would have to carry its own telecommunications traffic into its collocation space and then ... have the incumbent LEC transport that traffic over incumbent-owned facilities to an interconnection point outside the incumbent's premises. From [there], the other [CLEC] would likely then carry the traffic back to its own collocation space

in the same central office to be transported through the [CLEC's] network. *Id.* ¶ 64. Such "back hauling," the Commission found, would impose "significant wasteful economic costs" on CLECs that "incumbent LECs themselves do not face" and that would "severely restrict the viability of competitive transport." *Id.* ¶¶ 64 & n. 166, 63.

According to the Commission, three separate provisions of the Communications Act support the new cross-connect requirement. First, the Commission found the cross-connect requirement authorized under section 201(a), which requires a common carrier:

> to furnish such communication service upon reasonable request therefor; and, in accordance with the orders of the Commission, in cases where the Commission, after opportunity for hearing, finds such action necessary or desirable in the public interest, to establish physical connections with other carriers....

47 U.S.C. § 201. Second, an incumbent's "refusal to provision cross-connects," the Commission concluded, was an "unjust and unreasonable practice in connection with existing services," Remand Order ¶ 72, thus violating section 201(b)'s requirement that all "[c]harges, practices, classifications, and regulations for and in connection with such communication service ... be just and reasonable." 47 U.S.C. § 201(b). Finally, because it felt ILECs would be operating in an "unreasonable and discriminatory manner if [they] refused to provide cross-connects between collocators," Remand Order ¶ 79, the Commission found the new cross-connect requirement authorized by section 251(c)(6)'s requirement of collocation on such "terms and conditions" as are "just, reasonable, and nondiscriminatory," 47 U.S.C. § 251(c)(6). Arguing that *GTE* does not foreclose this result, the Commission pointed out that *GTE*

merely rejects the notion that cross-connects were collocatable equipment and never addresses whether the Commission "could require incumbent ... provisioned crossconnects pursuant to the 'rates, terms, and conditions' clause of section 251(c)(6)." Remand Order ¶ 81.

### Space assignment rules

Third and finally, in *GTE*, we vacated the Commission's space assignment rules. By banning ILECs from requiring competitors to use separate entrances, or isolated rooms or floors, those rules left "competitors ... free to pick and choose preferred space on the LECs' premises, subject only to technical feasibility." *GTE*, 205 F.3d at 426. Modifying the space assignment rules in response to *GTE*, the Commission gave ILECs "ultimate responsibility" for placement of equipment. Remand Order ¶ 90. An ILEC may also provide for the physical segregation of collocated equipment "if the proposed separated space is: (a) available in the same or a shorter time frame as non-separated space; (b) at a cost not materially higher than the cost of non-separated space; and (c) is comparable, from a technical and engineering standpoint, to non-separated space." Remand Order ¶ 102. Under the Remand Order, moreover, incumbents may require segregated spaces only where "legitimate security concerns, or operational constraints unrelated to the incumbent's ... competitive concerns, warrant them." *Id.* ¶ 102. The Commission adopted this final requirement after finding "based on the record ... that there [was] simply insufficient evidence to support a finding that incumbent['s] security concerns require physical separation of collocated equipment ... in every instance." *Id.* ¶ 101. It also held that ILECs could require separate entrances "where construction of such ... entrance[s] is technically feasible, and will neither artificially delay collocation provisioning nor materially increase the

requesting carrier's costs" and where an incumbent has "legitimate security concerns." *Id.* ¶ 103.

### II.

Claiming the Commission "failed to heed this Court's mandate" in *GTE*, Pet'rs' Opening Br. at 4, petitioner Verizon Communications, Inc., together with BellSouth Corporation and SBC Communications, Inc. (throughout this opinion we shall refer to petitioners as "Verizon") now petition for review. Verizon argues that (1) the Commission's new reading of section 251(c)(6) is overly broad because it allows for the collocation of equipment "at the premises" of ILECs even if "interconnection or access" could be obtained through the use of off-site equipment, *id.* at 15 (internal quotation marks omitted); (2) the Commission acted unlawfully by allowing CLECs to collocate switching or routing equipment and by permitting CLECs to collocate multifunctional equipment without demonstrating that each function is "necessary for interconnection or access," *id.* at 16; (3) the Commission has no authority to order carrier-to-carrier crossconnects; and (4) the new space assignment rules "grant competitors unwarranted rights to control the specific location of their equipment within the incumbent's premises," *id.* at 17. Intervening in support of the Commission are fourteen other telecommunications companies, led by AT&T Corporation.

■ The familiar standard established by *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), governs our review of the Commission's interpretation of a statute it administers. Under this standard, we first determine whether Congress has "spoken to the precise question at issue," and if not, we defer to any "permissible" agency interpretation. *Id.*

at 843, 104 S.Ct. at 2781–82. We do not understand Verizon to be arguing that the Commission's interpretation fails *Chevron's* first step, nor could such an argument succeed with respect to the agency's interpretation of section 251(c)(6) in light of our express holding that the relevant statutory terms are ambiguous. *See. GTE,* 205 F.3d at 421 (holding that the "disputed terms at issue—'necessary,' 'physical collocation,' and 'premises' . . . are ambiguous in their meanings"). Consequently, we "defer to the Commission's interpretations if they are reasonable and consistent with the statutory purpose." *Id.* Our deference is particularly great where, as here, the issues involve "a high level of technical expertise in an area of rapidly changing technological and competitive circumstances." *Sprint Comms. Co. v. FCC,* 274 F.3d 549, 556 (D.C.Cir.2001). With this highly deferential standard in mind, we consider each of Verizon's arguments.

■ We begin with Verizon's claim that the phrase "equipment necessary for interconnection or access to unbundled network elements at the premises of the local exchange carrier," 47 U.S.C. § 251(c)(6), means that CLECs may not place equipment on an ILEC's premises unless an off-site location is infeasible. According to Verizon, the Commission's interpretation, which focuses on whether the equipment is necessary for interconnection or access "regardless of its location in the network," Remand Order ¶ 25, "ignore[s] the pivotal phrase at the end of the sentence, which makes clear that equipment must be necessary . . . *at the premises of the local exchange carrier,*" Pet'rs' Opening Br. at 20. The only sensible interpretation of this language, Verizon argues, is that "the adjective 'necessary'" "relates" to "both components of the compound prepositional phrase *'for* interconnection or access . . . *at* the premises of the local exchange carrier.'" Pet'rs' Reply Br. at 4. Otherwise, "the 'premises' clause does no work at all;

it is simply a redundant appendage." Pet'rs' Opening Br. at 20.

As the Commission points out, on remand from *GTE,* Verizon made an entirely different textual argument, namely, that the word "necessary" modifies "physical collocation," not "equipment." *See* Comments of the Verizon Telephone Companies, Oct. 12, 2000 at 2 (requesting the Commission to "find that the term 'necessary' modifies the phrase 'physical collocation of equipment,' so that any physical collocation can be ordered only where that collocation is 'necessary for interconnection or access to unbundled network elements'"). The Commission rejected that argument, finding that the "most natural reading" of the statutory language, as dictated by "simple grammar," is that the term "necessary" modifies "equipment," not "physical collocation." Remand Order ¶ 25. Seizing upon this variation, the Commission insists that Verizon has waived its "at the premises" argument. *See High Plains Wireless, LP v. FCC,* 276 F.3d 599, 608 (D.C.Cir.2002) (citing 47 U.S.C. § 405(a)). We agree.

Conceding that it never presented to the Commission the precise textual argument it raises now, Verizon argues that "every facet of an argument" need not be presented to the Commission as long as the "basic challenge to a Commission policy was reasonably flagged." Pet'rs' Reply Br. at 9 (citation and internal quotation marks omitted). The case Verizon relies upon, *Time Warner Entertainment Co. v. FCC,* 144 F.3d 75, 81 (D.C.Cir.1998), however, establishes a slightly more demanding test. There, we held that if "a petitioner makes a basic challenge to a Commission policy, but the formulation of the issue presented to us was not precisely as presented to the Commission, we ask whether a reasonable Commission *necessarily* would have seen the question raised before us as part of the

case presented to it." 144 F.3d 75, 81 (D.C.Cir.1998). Here, Verizon made a quite specific textual argument before the Commission—that the word "necessary" modifies the phrase "physical collocation." In responding to this argument, the Commission had no occasion to consider the different textual argument made here— that the word "necessary" relates to the phrase "at the premises" as well as to the phrase "physical collocation." The textual argument Verizon made before the Commission does not logically implicate the one it makes now, as would have been the case if, for example, the Commission, in order to arrive at its decision, would necessarily have had to determine the effect of the "at the premises" language. In short, we do not believe that a "reasonable Commission *necessarily* would have seen" the argument Verizon now raises.

We have expressed our concern about the effect on federal "agencies' rightful role in statutory construction under the *Chevron* framework" when petitioners fail "to present statutory challenges to ... agencies for initial resolution." *Linemaster Switch Corp. v. EPA,* 938 F.2d 1299, 1309 (D.C.Cir.1991). This case implicates that concern. *Chevron*'s second step requires that we defer to an agency's interpretation of ambiguous statutory provisions such as section 251(c)(6). By failing to raise before the Commission the textual argument it makes now, Verizon has deprived us of the Commission's expert judgment, informed by the pertinent policy considerations, as to the relationship between the word "necessary" and the phrase "at the premises." Were we to reject the Commission's waiver argument, we would have to undertake the very sort of freewheeling policy inquiry that *Chevron* deference was crafted to avoid. This we may not do.

■ Our conclusion that Verizon has waived its primary statutory claim largely moots its challenge to the Commission's decision to allow collocation of switches and routers in certain instances, as Verizon's arguments depend heavily on its assertion that CLECs could feasibly locate such equipment off–premises. Verizon, however, makes an additional argument that focuses more precisely on the Commission's reasoning with respect to switches and routers rather than the general standard for equipment entitled to collocation. The Commission determined that without a

> switch[ ] or router, the local loop is merely a transmission medium theoretically capable of carrying telecommunications traffic. To access an unbundled local loop's theoretical capability of providing a telecommunications service, *i.e.,* of accommodating the transmission of information between or among points specified by the user, a requesting carrier must, as a practical, economic and operational matter, be able to switch or route traffic to or from that loop.

Remand Order ¶ 46 (internal quotation marks omitted). According to Verizon, this reasoning "has no apparent stopping point: Every piece of equipment in a competitor's network is arguably necessary to complete a call and thereby 'to access an unbundled local loop's theoretical capability of providing telecommunications service.'" Pet'rs' Opening Br. at 24. Although acknowledging the Commission's ruling that equipment used for "call-related databases, information services, or operations support" (i.e., back office equipment) "may not be collocated," Pet'rs' Br. at 24 (citing Remand Order ¶ 24), Verizon insists that the Commission "failed to articulate any coherent limiting principle to justify those exclusions" since a "competitor could hardly complete a call without using the appropriate database to determine where a call must be switched— thereby making such a database 'neces-

sary' on the same flawed reasoning that switching equipment is supposedly necessary." Pet'rs' Reply Br. at 12–13. Again, we disagree.

To begin with, we think it inaccurate to say that the Commission's reasoning has no limiting principle. Putting aside the question of whether a call-related database is "necessary" to access the functions of a local loop, Verizon gives us no reason to believe that the Commission's standard fails coherently to exclude "operations support system equipment" and other "troubleshooting, billing or record-keeping" equipment. Pet'rs' Reply at 12. Moreover, even with respect to call-related databases, given the heavy deference owed, the distinctions drawn by the Commission easily withstand scrutiny. The Commission relied on the fact that switching and routing equipment activates those capabilities of a loop that allow the loop to carry calls. That is not the case with call-related databases, which merely allow the switch to identify which local loop to activate but do not actually activate the loop's capabilities themselves.

■ Verizon next challenges the Commission's decision to allow collocation of multifunctional equipment in certain circumstances. According to Verizon, "that view of the Commission's statutory authority is squarely foreclosed by this Court's holding in *GTE* that the statute does not permit competitors to smuggle unnecessary functions into otherwise necessary equipment." Pet'rs' Opening Br. at 26. *GTE* contains no such holding. Rather, *GTE* simply expresses concern over the Collocation Order's standard, which seemed to allow competitors to add *any* function that "lower[ed] costs and increase[d] the services they [could] offer their customers." *GTE*, 205 F.3d at 424. By contrast, the Remand Order limits collocation of multifunctional equipment to devices whose "primary purpose" is inter-

connection or access to unbundled network elements and whose additional functions have a "logical nexus" to this primary purpose, Remand Order ¶¶ 36–40. We find this statutory interpretation eminently reasonable, particularly since the statute speaks of collocatable "equipment," not "functions." 47 U.S.C. § 251(c)(6).

■ Next, Verizon claims that the cross-connect requirement can be justified under neither section 201 nor section 251(c)(6). Relying on the general rule that "a specific statute will not be controlled or nullified by a general one," *Crawford Fitting Co. v. J.T. Gibbons*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987), Verizon first argues that the "general authority in section 201 simply does not empower the Commission to sidestep the specific limitation in section 251(c)(6) on the authorized use of collocated equipment." Pet'rs' Opening Br. at 38. Under the Remand Order, however, cross-connects are no longer collocated; rather, they are owned and maintained by the incumbent. Thus, section 251(c)(6)'s limitations on collocatable equipment are irrelevant. *Cf. Verizon Communications, Inc. v. FCC*, —— U.S. ——, 122 S.Ct. 1646, 1684, 152 L.Ed.2d 701 (2002) (noting in the context of section 251(c)(3) that "it takes a stretch to get from permissive statutory silence to a statutory right on the part of incumbents to refuse to combine [unbundled network elements] for a requesting carrier").

The only issue, then, is whether the cross-connect requirement can be justified under either section 201(a) or (b). Although the Commission explicitly invoked *both* subsections, Verizon's opening brief never addresses section 201(b). Not until its reply brief does Verizon argue that section 201(b) might not apply even in the absence of section 251(c)(6), Pet'rs' Reply Br. at 22, but this comes too late, *see*

*Power Co. of Am., L.P. v. FERC,* 245 F.3d 839, 845 (D.C.Cir.2001) (finding arguments not in opening brief waived). We will thus affirm the Commission on that ground without reaching the question of whether the Commission reasonably invoked either section 201(a) or section 251(c)(6)'s "terms[ ] and conditions" clause.

This brings us, finally, to Verizon's challenge to the space assignment rules. According to Verizon, the "new rules, though superficially more limited" than the previous rules struck down in *GTE,* "nonetheless effectively allow competitors to insist on *their* space preferences and apparently prevent incumbents from requiring that competitors install their equipment in segregated space." Pet'rs' Opening Br. at 40. This argument lacks merit. Attempting to make the current rule resemble the vacated portions of the previous rule, Verizon mischaracterizes both. For example, Verizon states that "the default rule effectively remains *what it was before*: Incumbents apparently may not, as a general matter, require segregated collocation space and separate entrances." Pet'rs' Opening Br. at 40 (emphasis added). This inaccurately describes the Collocation Order; instead of mandating as a "default" that incumbents could not require segregated space and separate entrances, that order prohibited their use completely. *See* Collocation Order ¶ 42.

Turning to the current rule and mischaracterizing it as well, Verizon argues that ILECs' "security and efficiency concerns apparently count for *nothing* in the Commission's calculus." Pet'rs' Opening Br. at 41. The Commission, however, abandoned the requirement that CLECs be permitted to control the placement of equipment; rather, the Remand Order acknowledges that because "[a]n incumbent is far more familiar with the design and layout of its premises," it should have "ultimate responsibility" for determining where to place equipment. Remand Order ¶ 90. Moreover, rather than banning separate entrances and segregated facilities outright, the Commission established a presumption against their use, which ILECs can rebut by showing that legitimate security concerns require separate facilities or entrances, that the separate facilities are comparable from an engineering standpoint, that they are available on a similar time frame, and that their use will not "materially" increase CLEC costs. Remand Order ¶ 102. Finally, the Commission did not ignore ILEC security concerns; rather, it found "insufficient evidence to support a finding that [those] concerns require physical separation of collocated equipment from the incumbent's own equipment in every instance." *Id.* ¶ 101.

As Verizon's brief makes clear, it prefers a rule that "at a minimum, permit[s] an incumbent, as a default, ... to determine where in its central office ... competitors may install their equipment and the path they may take through those buildings." Pet'rs' Opening Br. at 40. But this is a policy judgment for the Commission; nothing in the statute mandates such a result or disallows the path the Commission here has chosen.

## III.

The petitions for review are denied.

*So ordered.*