Justice Ginsburg,
concurring in part and concurring in the judgment..
I agree, in the main, with the Court’s resolution of this case, but part ways with the Court’s opinion in one respect. The Court extracts from Pennhurst State School and Hospi *305 tal v. Halderman, 451 U. S. 1, 17 (1981), a “clear notice” requirement, and deems it applicable in this case because Congress enacted the Individuals with Disabilities Education Act (IDEA), as it did the legislation at issue in Pennhurst, pursuant to the Spending Clause. Ante, at 296. That extraction, in my judgment, is unwarranted. Pennhursts “clear notice” requirement should not be unmoored from its context. The Court there confronted a plea to impose “an unexpected condition for compliance—a new [programmatic] obligation for participating States.” Bell v. New Jersey, 461 U. S. 773, 790, n. 17 (1983). The controversy here is lower key: It concerns not the educational programs IDEA directs school districts to provide, but “the remedies available against a noncomplying [district].” Ibid.; see post, at 316-318 (Breyer, J., dissenting).
The Court’s repeated references to a Spending Clause derived “clear notice” requirement, see ante, at 295-296, 298, 300, 303, and n. 3, are questionable on other grounds as well. For one thing, IDEA was enacted not only pursuant to Congress’ Spending Clause authority, but also pursuant to § 5 of the Fourteenth Amendment. See Smith v. Robinson, 468 U. S. 992, 1009 (1984) (IDEA’S predecessor, the Education of the Handicapped Act, was “set up by Congress to aid the States in complying with their constitutional obligations to provide public education for handicapped children.”). Furthermore, no “clear notice” prop is needed in this case given the twin pillars on which the Court’s judgment securely rests. First, as the Court explains, ante, at 297-298, the specific, attorneys’-fees-oriented, provisions of IDEA, i. e., 20 U. S. C. § 1415(i)(3)(B)-(G); § 1415(d)(2)(L) (2000 ed., Supp. V), “overwhelmingly support the conclusion that prevailing parents may not recover the costs of experts or consultants,” ante, at 300. Those provisions place controls on fees recoverable for attorneys’ services, without mentioning costs parents might incur for other professional services and controls geared to those costs. Second, as the Court develops, prior *306 decisions closely in point “strongly suppor[t],” even “confir[m] ... dramatically,” today’s holding that IDEA trains on attorneys’ fees and does not authorize an award covering amounts paid or payable for the services of an educational consultant. Ante, at 301 (citing Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U. S. 437 (1987), and West Virginia Univ. Hospitals, Inc. v. Casey, 499 U. S. 83 (1991)).
For the contrary conclusion, Justice Breyer’s dissent relies dominantly on a Conference Report stating the conferees’ view that the term “attorneys’ fees as part of the costs” includes “expenses and fees of expert witnesses” and payments for tests necessary for the preparation of a case. H. R. Conf. Rep. No. 99-687, p. 5 (1986) (internal quotation marks omitted).[1] Including costs of consultants and tests in § 1415(i)(3)(B) would make good sense in light of IDEA’S overarching goal, i. e., to provide a “free appropriate public education” to children with disabilities, § 1400(d)(1)(A). See post, at 313-316 (Breyer, J., dissenting). But Congress did not compose § 1415(i)(3)(B)’s text,[2] as it did the texts of other *307 statutes too numerous and varied to ignore, to alter the common import of the terms “attorneys’ fees” and “costs” in the context of expense-allocation legislation. See, e. g., 42 U. S. C. § 1988(c) (added, in 19'91 specifically to “include expert fees as part of the attorney’s fee”); Casey, 499 U. S., at 88-92, and n. 4 (citing variously composed statutes that “explicitly shift expert. . . fees as well as attorney’s fees”). Given the constant meaning of the formulation “attorneys’ fees as part of the costs” in federal legislation, we are not at liberty to rewrite “the statutory text adopted by both Houses of Congress and submitted to the President,” id., at 98, to add several words Congress wisely might have included. The ball, I conclude, is properly left in Congress’ court to provide, if it so elects, for consultant fees and testing expenses beyond those IDEA and its implementing regulations already authorize,[3] along with any specifications, conditions, or limitations geared to those fees and expenses Congress may deem appropriate. Cf. § 1415(i)(3)(B)-(G); § 1415(d)(2)(L) (listing only attorneys’ fees, not expert or consulting fees, among the procedural safeguards about which school districts must inform parents).
In sum, although I disagree with the Court’s rationale to the extent that it invokes a “clear notice” requirement tied *308 to the Spending Clause, I agree with the Court’s discussion of IDEA’S terms, ante, at 296-298, and of our decisions in Crawford and Casey, ante, at 300-303. Accordingly, I concur in part in the Court’s opinion, and join the Court’s judgment.

 The relevant statement from the Conference Report reads in its entirety:
“The conferees intend that the term ‘attorneys’ fees as part of the costs' include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the parent or guardian’s case in the action or proceeding, as well as traditional costs incurred in the course of litigating a case.” H. R. Conf. Rep. No. 99-687, at 5.
Although the Conference Report goes on to consider other matters, including controls on attorneys’ fees, nothing further is said on expert witness-fees or test costs.

 At the time the Conference Report was submitted to the Senate and House, sponsors of the legislation did not mention anything on the floor about expert or consultant fees. They were altogether clear, however, that the purpose of the legislation was to “reverse” this Court’s decision in Smith v. Robinson, 468 U. S. 992 (1984). In Smith, the Court held that, under the statute as then designed, prevailing parents were not entitled to attorneys’ fees. See 132 Cong. Rec. 16823 (1986) (remarks of Sen. Weicker) (“In adopting this legislation, we are rejecting the reasoning of *307 the Supreme Court in Smith versus Robinson.”); id., at 16824 (remarks of Sen. Kerry) (“This vital legislation reverses a U. S. Supreme Court decision Smith versus Robinson[.]”); id., at 17608-17609 (remarks of Rep. Bartlett) (“I support those provisions in the conference agreement that, in response to the Supreme Court decision in ... Smith versus Robinson, authoriz[e] the awarding of reasonable attorneys’ fees to parents who prevail in special education court cases.”); id., at 17609 (remarks of Rep. Biaggi) (“This legislation clearly supports the intent of Congress back in 1975 and corrects what I believe was a gross misinterpretation of the law. Attorneys’ fees should be provided to those individuals who are being denied access to the educational system.”).

 Under 34 CPR § 300.502(b)(1) (2005), a “parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency.”