Amy Totenberg, United States District Judge
This False Claims Act ("FCA") matter is before the Court on Defendant's Bill of Costs [Doc. 260]. The parties litigated this case for approximately five years, at the end of which the Court denied Defendant's motion to dismiss for lack of subject matter jurisdiction, denied Plaintiff's partial motion for summary judgment, and granted Defendant's motion for summary judgment. (Docs. 254, 255.) The Court ordered the case closed on October 30, 2015, and Plaintiff appealed the Court's grant of summary judgment in favor of Defendant. Shortly after, Defendant filed a Bill of Costs on November 30, 2015. (Doc. 260.) Plaintiff objected to Defendant's Bill of Costs on several grounds and sought to stay the taxation of costs until the Eleventh Circuit had decided his appeal. (Doc. 264.) The Court granted Plaintiff's request to stay the case pending the Eleventh Circuit's decision.
On November 8, 2016, the Eleventh Circuit reversed this Court's grant of summary judgment on the merits. The Eleventh Circuit held that Plaintiff's FCA claim had previously been publicly disclosed, and therefore this Court did not have subject matter jurisdiction over the case. United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc. , 841 F.3d 927 (11th Cir. 2016). Accordingly, the Eleventh Circuit remanded the case for entry of an order dismissing the case for lack of subject matter jurisdiction, which the Court entered on March 6, 2017. The Court now considers Defendant's Bill of Costs and Plaintiff's objections to the same.
I. Legal Standard
Federal Rule of Civil Procedure 54(d)(1) provides in relevant part, "Unless a federal *1349 statute, these rules, or a court order provides otherwise, costs-other than attorney's fees-should be allowed to the prevailing party." Under 28 U.S.C. § 1920, a district court may tax the following as costs against a party:
1) Fees of the clerk and marshal;
2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
3) Fees and disbursements for printing and witnesses;
4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
5) Docket fees under section 1923 of this title;
6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
The Eleventh Circuit has held that Rule 54(d)(1) gives rise to a presumption that costs should be awarded to the prevailing party, but it "vests the district court with discretion to decide otherwise." Chapman v. AI Transp. , 229 F.3d 1012, 1038 (11th Cir. 2000) ; see also Crawford Fitting Co. v. J.T. Gibbons, Inc. , 482 U.S. 437, 442, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) ( 28 U.S.C. § 1920"is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party") (superseded on other grounds). The losing party bears the burden of demonstrating that costs, in whole or in part, are not taxable. Manor Healthcare Corp. v. Lomelo , 929 F.2d 633, 639 (11th Cir. 1991). A court's discretion is awarding or denying costs is not unfettered, however. For one, a court may not award costs in excess of those permitted by § 1920. Crawford Fitting Co. , 482 U.S. at 442, 107 S.Ct. 2494. And in the event a court chooses to deny costs, it must articulate a sound basis for doing so. Chapman v. AI Transp. , 229 F.3d at 1039.
Courts have considered a number of equitable factors when deciding whether or not to award costs. These factors include the closeness and difficulty of the case, misconduct by the prevailing party, good faith by the losing party, the losing party's limited financial resources, whether an award would have a chilling effect on future plaintiffs bringing claims, and the public importance of the case, among others. See, e.g. , Whitfield v. Scully , 241 F.3d 264, 270 (2d Cir. 2001) (abrogated in part on other grounds); White & White, Inc. v. Am. Hosp. Supply Corp. , 786 F.2d 728, 733 (6th Cir. 1986) ; Thomas v. Clayton Cty., Ga. , 94 F.Supp.2d 1330, 1342 (N.D. Ga. 2000). If a court chooses to consider a losing party's limited financial resources, it must require "substantial documentation of a true inability to pay." Chapman , 229 F.3d at 1039. Moreover, a losing party's good faith and limited financial resources are not sufficient on their own to overcome the presumption in favor of awarding costs. Pickett v. Iowa Beef Processors , 149 Fed.Appx. 831, 832 (11th Cir. 2005).
II. Discussion
Defendant seeks $167,853.63 in its Bill of Costs. The costs fall into the following three categories under 28 U.S.C. § 1920 :
*1350 Cost Category Proposed Cost 1. Fees of the Clerk $ 450.00 2. Fees for printed or electronically recorded transcripts $ 22,335.39 necessarily obtained for use in the case 3. Fees for exemplification and the costs of making copies $ 145,068.24 of any materials where the copies are necessarily obtained for use in the case TOTAL $ 167,853.63
Defendant attached invoices to support its claim for these costs, including invoices for court fees, deposition transcripts and videotaping, pre-trial hearing transcripts, e-discovery copying costs, and physical document copying costs.
Plaintiff objects to the taxation of these costs for multiple reasons. For one, he emphasizes that this was a close, hard-fought case involving difficult and complex legal issues. He asserts that he pursued this litigation in good faith and prevailed on key issues, such as defeating Defendant's two motions to dismiss and proving falsity under the FCA at summary judgment. Plaintiff further asserts that Defendant engaged in obstructive discovery conduct, which necessitated his motion to compel discovery and his motion for sanctions. Given his financial situation and unemployment status, Plaintiff claims that he is unable to pay costs of $167,853.63. Based on principles of equity under Rule 54, Plaintiff asks the Court to deny Defendant's request for costs. Additionally, Plaintiff makes a non-equitable argument for denying certain costs (as opposed to all costs). Plaintiff asserts that Defendant seeks e-discovery related costs that do not constitute "copying" costs under § 1920, and therefore these costs must be denied.
In reply, Defendant argues that Plaintiff has not carried his burden of showing that the total requested costs should not be awarded. Defendant cites to cases stating that neither complex litigation nor good faith by the losing party is a sufficient basis, in and of itself, for denying costs. Moreover, a Court may consider a losing party's inability to pay, but only if there is substantial documentation showing so. Defendant also asserts that it did not engage in obstructive or bad faith conduct, since its failure to produce certain documents was a mistake, not intentional. With respect to Plaintiff's argument about improper copying costs under § 1920, Defendant argues that its claimed e-discovery costs are proper because they relate to digital activities that courts have found to constitute "copying" (e.g., TIFF conversion, metadata extraction).
A. Fees of the Clerk, Deposition-Related Fees, and Pre-trial Hearing Transcript Fees
Defendant represents that it is entitled to $450 for fees of the Clerk. These fees are for pro hac vice applications for three "experienced FCA lawyers whose participation was necessary." (Doc. 261 at 4.) Plaintiff does not specifically object to this request, and the Court finds that it is reasonable. The Court awards the fees of the Clerk to Defendant.
Additionally, Defendant seeks $22,335.39 in costs for deposition transcripts, videos, and exhibits. These costs are associated with sixteen different depositions of thirteen individuals, and Plaintiff noticed depositions for roughly half of these individuals. The Court has also reviewed the parties' summary judgment and motion to dismiss briefings, and it is evident that both sides relied on these depositions to support their arguments.
*1351 Defendant's request for these fees is reasonable, and Plaintiff has not sufficiently demonstrated otherwise. The Court therefore awards these costs.
Similar reasoning applies to Defendant's request for $525.20 for pre-trial hearing transcript costs, though the Court does not award all of these costs. These costs cover the transcripts for the following: the May 21, 2012 status conference; the January 11, 2013 phone conference regarding the status of the case; the June 17, 2014 oral arguments regarding Plaintiff's motion for sanctions; and the August 13, 2015 oral arguments regarding the motions for summary judgment.
The Court finds all of these costs to be reasonable except for the transcript costs for the June 17, 2014 oral arguments regarding Plaintiff's motion for sanctions. As Plaintiff points out, the costs associated with its motion for sanctions arise directly from Defendant's problematic conduct. In particular, the issue was that Defendant produced relevant emails (including a potentially "smoking gun" email) at some later date that it should have produced much earlier-especially given that Plaintiff had already taken several depositions of Fresenius employees by that point. The Court held a hearing to better understand whether this was an "innocent mistake" or was "indicative of something more serious." (Doc. 189 at 19.) The Court ultimately denied as moot Plaintiff's motion for sanctions because the parties had reached an agreement resolving the issue. (Doc. 193 at 52.) However, even if Defendant did not intentionally withhold the relevant email documents, it was undeniable that Defendant did not act swiftly to correct its error upon discovering it. (Doc. 193 at 16-17.) Defendant's delay on this issue alone resulted in a 150-day extension of discovery. (Id. at 45.) The Court does not find that Defendant acted in bad faith per se, though the record shows that Defendant could have been more diligent and forthcoming during discovery. See, e.g. , Moody Nat. Bank of Galveston v. GE Life & Annuity Assur. Co. , 423 F.Supp.2d 651, 652 (S.D. Tex. 2003).
Upon weighing the equities, the Court finds that Defendant is not entitled to the $70.20 transcript cost associated with the sanctions hearing. The Court awards Defendant $455.00 for the three other pre-trial hearing transcripts.
B. Fees for Exemplification: ESI and Hard Copies
Defendant seeks discovery-related copying costs for hard copies and for copying electronically stored information ("ESI"). With respect to hard copies, Defendant requests $7,687.76 for copies of deposition exhibits, documents in preparation for depositions, and exhibits for summary judgment briefings (i.e., physical courtesy copies provided to the court). Defendant has properly documented these costs in Exhibit C(3) and stated a reasonable basis for them. Plaintiff does not specifically object to these hard copy costs aside from his general objections. The Court finds that Plaintiff has not overcome the presumption that Defendant is entitled to these costs and therefore awards them to Defendant.
Defendant's request for $137,380.48 for ESI costs is another matter. These costs make up over 80 percent of Defendant's Bill of Costs, yet Defendant has not carried its initial burden of demonstrating that these costs are authorized under federal law. In particular, Plaintiff objects to these costs on the grounds that they do not constitute "copying" as contemplated by 28 U.S.C. § 1920(4), and the Court finds some merit to this argument after reviewing Defendant's invoices.
As a preliminary matter, the Court examines the case law on this issue. The *1352 Eleventh Circuit has not directly ruled on whether e-discovery-related copying costs are recoverable. However, in a case relied on by both parties, the Federal Circuit applied Eleventh Circuit law on this very issue. See CBT Flint Partners, LLC v. Return Path, Inc. , 737 F.3d 1320, 1326 (Fed. Cir. 2013). In deciding what e-discovery costs are included in the scope of 28 U.S.C. § 1920(4), the Federal Circuit adopted a three-tiered framework to analyze the services provided by e-discovery vendors: (1) copying electronic documents as a whole from their source material (e.g., a computer hard drive); (2) organizing the electronic materials into a database; indexing, decrypting, and de-duplicating the materials; and then filtering and reviewing the materials to determine which ones are privileged or responsive to discovery requests; and (3) exporting electronic documents onto deliverable memory media, such as a hard drive or a DVD. Id. at 1328-29. The Federal Circuit determined that activities falling within the second category are most likely not taxable as costs, whereas activities within the first category are mostly taxable and activities within the third category are taxable. Id. at 1331-1332. The Federal Circuit explained that keyword searches, for example, are mostly related to the document review process as opposed to the copy-making process, and § 1920(4) does not include document review costs as taxable. Similarly, the act of deduplication is not included under § 1920(4), since depulication "is the culling of a set of documents to eliminate duplicate copies of the same document," and it is therefore "pre- or post-copying activity (depending on when the culling is done), not itself the making of copies." Id.
While the CBT decision is not controlling, the Court finds CBT persuasive as have other district courts within this circuit. See, e.g. , Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp. , 2 F.Supp.3d 1306, 1313 (N.D. Ga. 2014) (citing to CBT when denying e-discovery costs to defendant as the costs were for indexing, de-duplicating, and filtering the electronic documents); Procaps S.A. v. Patheon, Inc. , No. 12-24356-CIV-GOODMAN, 2016 WL 411017, at *11 (S.D. Fla. Feb. 2, 2016) (applying three-tiered framework adopted by CBT to grant in part and deny in part requests for e-discovery costs). The Court applies CBT 's three-category framework when assessing Defendant's e-discovery-related costs.
Defendant has claimed a number of costs in Exhibits C(1) and C(2) that appear to fall within the second category deemed non-taxable by CBT . For example, Defendant claims some costs that are described on the invoices as "dedupe, data filter and keyword search." (See, e.g. , Exhibit C(1), Doc. 260-3 at 13.) These costs are plainly non-taxable under CBT . Additionally, Defendant requests a substantial amount of costs for Optical Character Recognition ("OCR") services. CBT does not explicitly address whether OCR services are taxable. In Procaps v. Patheon Inc. , however, the U.S. District Court in the Southern District of Florida relied on CBT 's reasoning and characterized OCR as non-taxable. 2016 WL 411017, at *13 ; see also CBT , 737 F.3d 1320 at 1330 (excluding costs that are incurred "just to make copies for the convenience of the producing party"). The court followed the "fundamental principle that the costs statute is modest and narrow and limited to relatively minor, incidental expenses." Id. (internal citations removed). The Court finds the reasoning in Procaps persuasive and also in line with CBT , since the OCR process is "not itself the making of copies" but is more about "making post-copying review more efficient." CBT , 737 F.3d 1320 at 1332. Thus, the OCR costs are also not taxable.
*1353 These non-taxable costs are mixed in among other costs listed in Defendant's invoices. The Court is unable (and certainly not obligated) to wade through the approximately 200 pages of invoices to determine if some of the non-taxable costs overlap with other taxable costs. The Court's discovery of non-taxable costs within these invoices also casts doubt on other itemized costs with general descriptions. For instance, the Court cannot be sure that some of the more general itemizations exclude costs for OCR or de-duplication. And even after Plaintiff raised these sorts of issues in his objections, Defendant did nothing in its Reply to clarify its 200 pages of invoices or the challenged itemizations.
Plaintiff also raises a number of equitable factors that weigh against a full award of Defendant's requested costs-particularly the large sum of ESI costs at issue. The Court considers each of these factors in turn.
1. Closeness and complexity of the case
Many courts have denied costs based partly on the fact that the "issues presented were difficult, novel, or complex." 10 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2668 (3d ed. 1998). In Friends of Everglades v. South Florida Water Management Dist. , an advocacy organization sued the local government under the Clean Water Act to keep it from pumping polluted water into a lake and lost on immunity grounds. 865 F.Supp.2d 1159, 1161-63 (S.D. Fla. 2011). The court then declined to award the defendants' full requested costs, in large part because "this was a close difficult case, involving novel and complex issues of fact and law." Id. at 1167. The court further explained:
In this case, the bench trial lasted for two months, the Eleventh Circuit recognized that it was reviewing a question of first impression, see Friends of the Everglades [v. South Florida Water Management Dist.] , 570 F.3d [1210] at 1218 [ (11th Cir. 2009) ], and the Eleventh Circuit acknowledged the extensive fact-finding process involved at trial, see id. at 1216 n. 4. This was a close, difficult, and complex case.
Id. at 1168.[1]
Similarly, in United States ex rel. Pickens v. GLR Constructors, Inc. , the court declined to award any requested costs in an FCA case it described as "close, competitive, hard fought, and difficult [ ] for both sides." 196 F.R.D. 69, 76 (S.D. Ohio 2000). The court found this case to be close because it raised "novel legal issues," required the parties to sift through "voluminous factual evidence," and resulted in a five-week trial and "protracted litigation over a five-year period." Id. Based on this factor and other factors, such as the relator's good faith and the likely chilling effect on future relators, the court concluded it was equitable for the parties to bear their own costs. Id. at 77 ; see also White , 786 F.2d at 733 (affirming lower court's denial of costs based partly on the length and difficulty of the antitrust case, which involved an 80-day trial and "begat a 95 page opinion"); Ass'n of Mexican-American Educators v. State of California , 231 F.3d 572, 593 (9th Cir. 2000) (affirming lower court's denial of costs based partly *1354 on the issues being complex in this civil rights case).
Defendant argues that the closeness and complexity of the case (including the fact that Plaintiff prevailed on certain rulings) is not a relevant factor for the Court's analysis of costs. As support for this argument, Defendant cites to the Third Circuit's decision in In re Paoli R.R. Yard PCB Litig. , where the Third Circuit held that complexity of a case "is not an appropriate [factor] for district courts to consider." 221 F.3d 449, 467 (3d Cir. 2000), as amended (Sept. 15, 2000). Though this decision is still good law, the Court notes that the Third Circuit explicitly based its reasoning on a Ninth Circuit decision that was later overruled on relevant grounds. See Nat'l Info. Servs., Inc. v. TRW, Inc. , 51 F.3d 1470 (9th Cir. 1995), overruled by Ass'n of Mexican-Am. Educators v. State of California , 231 F.3d 572 (9th Cir. 2000). Specifically, in overruling its earlier decision, the Ninth Circuit held that a district court's reasons for denying costs-including the closeness and complexity of the case-were appropriate under Rule 54(d). Ass'n of Mexican-Am. Educators , 231 F.3d at 593. Defendant also cites to the Tenth Circuit's decision in Klein v. Grynberg as rejecting the complexity and length of a case as a relevant factor. 44 F.3d 1497, 1507 (10th Cir. 1995). The Tenth Circuit did not make such a sweeping statement in this decision. It merely found that the complexity factor did not justify denying costs in this particular case. The Tenth Circuit has made clear in subsequent decisions that such a factor may indeed justify denying costs. See Zeran v. Diamond Broad., Inc. , 203 F.3d 714, 722 (10th Cir. 2000).
Other than the Third Circuit, the Court is not aware of another circuit court rejecting the complexity factor as relevant to a Rule 54(d) analysis. The Sixth, Ninth, and Tenth Circuits have all explicitly held that the complexity factor is relevant. Furthermore, while the Eleventh Circuit has not expressly held one way or the other, the Eleventh Circuit has considered complexity when reviewing and affirming a lower court's decision to award costs. Pickett v. Iowa Beef Processors , 149 Fed.Appx. 831, 833 (11th Cir. 2005) (finding that the case was "not a close or difficult one," that the legal issues were "not particularly novel or difficult, and that "[a]lthough it took a long time to try, the case was not especially complicated"). Consistent with the weight of authority on this issue, the Court therefore considers the complexity of the present case in ruling on Defendant's bill of costs.
This case was particularly close and complex as evidenced by its history. Over a five-year period of litigation, the parties briefed two motions to dismiss and two rounds of summary judgment before the case was appealed. Defendant first moved to dismiss based on a lack of subject jurisdiction (among other things), and the Court denied the motion, partly because the Court found Plaintiff to be an "original source" for purposes of the FCA. (Doc. 57.) The Court then ordered two waves of discovery and two corresponding rounds of summary judgment briefing in light of the number and complexity of issues in the case. (Doc. 83.) During the first round of summary judgment, the only legal question before the Court was the falsity element of the FCA. The Court found in favor of Plaintiff on the falsity element. The case then proceeded to the second wave of discovery regarding the intent element and other issues, which led to the second round of summary judgment. (Doc. 144.) Altogether, the parties attached nearly 300 exhibits to their respective motions for summary judgment. Around the same time, Defendant filed a second motion to dismiss for lack of subject jurisdiction.
*1355 (Doc. 215.) The Court denied Defendant's second motion to dismiss, again partly based on Plaintiff being an "original source." (Doc. 254.) Turning to the merits of the case, the Court granted summary judgment in favor of Defendant based on insufficient evidence of intent to defraud. The Court's decision on summary judgment alone was 108 pages long. (Doc. 255.) Plaintiff appealed the decision.
On appeal, the Eleventh Circuit disagreed with the Court's finding that Plaintiff was an original source under the FCA. The Eleventh Circuit held that the Court lacked subject matter jurisdiction for this reason. Thus, it reversed the Court's summary judgment decision on the merits and remanded the case for entry of a dismissal order. Yet in reaching its decision that Plaintiff was not an original source, the Eleventh Circuit noted the novelty of this particular issue:
Given that Saldivar's firsthand knowledge related to inventory and administration of overfill not costs and billing, we now approach a question we have not explicitly addressed previously : whether Saldivar's secondhand knowledge is sufficient to make him an original source.... We find the reasoning of our sister circuits persuasive when reading the statute. The phrase "direct and independent" is most naturally read as creating an extreme limit on secondhand knowledge that is sufficient to qualify as an "original source." In this case, Saldivar was told that inventory spreadsheets were used for billing purposes. This is not direct knowledge of the alleged improper billing.
United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc. , 841 F.3d 927, 935-36 (11th Cir. 2016) (emphasis added).
This case checks nearly all the boxes for closeness and complexity. It presented "novel legal issues," involved complex questions of fact and law, required "extensive fact-finding" over two waves of discovery, begat a 108-page summary judgment merits opinion, and resulted in "protracted litigation over a five-year period." Pickens , 196 F.R.D. at 76 ; White , 786 F.2d at 733 ; Friends of Everglades , 865 F.Supp.2d at 1168. All of this occurred despite the case never going to trial. Even Defendant admits this case was complex. (Def.'s Motion, Doc. 261 at 12) (noting that an award for pre-trial transcripts is "especially appropriate in complex cases, such as this").
Here, the circumstances depict a quintessentially complex, hard-fought case-just the type that could potentially "overcome the strong presumption that a prevailing party is entitled to costs." Pickett , 149 Fed.Appx. at 833.
2. Effect on other FCA relators
Another factor courts consider when determining whether to award costs is the possible chilling effect on future plaintiffs. Courts assess the possibility that their award of costs in a given case could deter future plaintiffs from bringing similar claims in good faith. The purpose of the FCA's qui tam provision is "to encourage private individuals who are aware of fraud being perpetrated against the Government to bring such information forward.' " United States ex rel. Dick v. Long Island Lighting Co. , 912 F.2d 13, 18 (2nd Cir. 1990) (quoting H.R. Rep. No. 660, 99th Cong., 2d Sess. 22 (1986)). Yet "[future relators] may be persuaded from bringing complex and expensive FCA actions, especially if future relators face the risk of paying substantial litigation costs to a prevailing defendant." Pickens , 196 F.R.D. at 77. In other words, this factor carries greater weight in cases that are "often complicated [in] nature." Friends of Everglades , 865 F.Supp.2d at 1169. This factor is not decisive in itself, since this would mean that courts could routinely deny costs in all FCA cases. Instead, it is one *1356 factor among others that could weigh against awarding costs, particularly where the case is complex.
Here, Defendant is seeking a significant amount of costs in a close and complex FCA case. Plaintiff also brought this case to challenge Medicare fraud. Specifically, Plaintiff challenged Defendant's practice of billing the federal government for overfill for certain prescriptions-a practice that the Centers for Medicare and Medicaid Services expressly prohibited after this case was filed. Under these circumstances, an award of costs to Defendant could well have a chilling effect on future relators bringing qui tam actions based on Medicare or Medicaid fraud. Thus, this factor weighs against a full award of costs.
3. The parties' conduct
The Court may consider each party's conduct in determining whether to award costs. Where the losing party has demonstrated good faith, by litigating the case in a "competent, reasonable, and professional" manner, this may weigh in favor of denying costs. Pickens , 196 F.R.D. at 76. For instance, the merits of the losing party's claims and the closeness of the case are indicative of good faith. See id. However, good faith on its own is not a sufficient basis for denying costs; it is a relevant factor among other factors. White , 786 F.2d at 731. Furthermore, just as the losing party's good faith may be relevant, the prevailing party's bad faith conduct or tactics prolonging the litigation may also be relevant considerations. Andretti v. Borla Performance Indus., Inc. , 426 F.3d 824, 836 (6th Cir. 2005) ; see also Wheatley v. Moe's Sw. Grill, LLC , 580 F.Supp.2d 1319, 1323 (N.D. Ga. 2008).
The circumstances here show that Plaintiff filed and litigated this case in good faith. Plaintiff persuasively argued against Defendant's two motions to dismiss, both of which the Court denied. Additionally, Plaintiff successfully established the falsity element under the FCA-a significant legal issue-during the first round of summary judgment.
In contrast, Defendant took certain actions during discovery that unnecessarily prolonged the case. At one point, Plaintiff moved to compel production of documents after Defendant refused to produce certain documents under the attorney-client privilege. The Court granted Plaintiff's motion and compelled production because Defendant had attempted to improperly use the attorney-client privilege as both a sword and a shield. Specifically, Defendant had argued that it acted in the good faith belief that its conduct was legal, but when Plaintiff sought discovery on this issue, Defendant turned around and claimed attorney-client privilege. Thus, Defendant had effectively waived the privilege. (See Doc. 166.) Moreover, as discussed above, Plaintiff moved for sanctions as a result of Defendant's failure to produce all relevant emails and then its delay in correcting the error or alerting Plaintiff about it.
Accordingly, the Court considers the relative conduct of the parties and assigns it some weight (though not substantial) against a full award of costs.
4. Plaintiff's financial resources
A losing party's financial status is a factor that a court may, but need not, consider in awarding or denying costs. Chapman v. AI Transp. , 229 F.3d at 1039. "If a district court in determining the amount of costs to award chooses to consider the non-prevailing party's financial status, it should require substantial documentation of a true inability to pay.... Even in those rare circumstances where the non-prevailing party's financial circumstances are considered in determining the amount of costs to be awarded, a court may not decline to award any costs at all." Id. Furthermore, a court may not consider *1357 the relative wealth of the parties in determining the amount of costs to award. Id.
Plaintiff asserts that he cannot afford to pay the requested costs, and he includes a roughly one-page declaration in support of his inability to pay. The declaration states that Plaintiff was earning $20-$21 per hour while he was employed by Defendant; that he has been unemployed since 2009 when his employment with Defendant ended; and that he has been supporting his family solely on a "$250,000 loan referenced in Fresenius' brief." (Doc. 264-1.)
Plaintiff has not satisfied the requirement of providing "substantial documentation of a true inability to pay" for the Court to be able to consider this factor in its awards determination. Chapman v. AI Transp. , 229 F.3d at 1039. He cannot simply rely on his own statements that he is unable to pay. McGill v. Faulkner , 18 F.3d 456, 459 (7th Cir. 1994) ("McGill failed to establish in this record that he was incapable of paying the court-imposed costs at this time or in the future. His response to the prison officials' petition for costs merely alleged, without documentary support, that he was indigent and therefore he should not have to pay costs.... McGill offered nothing other than unsupported, self-serving statements that he was unable to pay the costs sought by the prison officials."). The Court is sympathetic to Plaintiff's situation if it is as he claims. But the Court is bound by case authority and therefore does not assign any weight to this factor.
5. Weighing of all equitable factors together
Overall, the Court weighs the closeness and complexity of this case, the chilling effect that an award of costs in this case could have on other FCA plaintiffs, and the parties' relative conduct in litigating this case. The Court considers these factors against the "strong presumption" that Defendant is entitled to a full award of costs. Given the difficult and distinctive circumstances of this case as discussed above, combined with Defendant's failure to sufficiently support its request for significant ESI costs, the Court finds a strong basis for denying the ESI costs. Indeed, the Court's discretion in awarding or denying costs exists so that it may consider equity and adjust as needed, particularly in cases such as this one. The Court denies Defendant's request for $137,380.48 in ESI costs.
III. CONCLUSION
For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendant's Bill of Costs. [Doc. 260]. The Court awards Defendant $30,402.95 in costs.
IT IS SO ORDERED this 28th day of November, 2017.

The district court ultimately awarded the defendants half of the trial transcript fees. But the court based this decision on the defendants' contention that all parties agreed defendants would "front" the costs of the transcripts and later be reimbursed, and that all parties relied heavily on the transcripts at trial. Id. at 1169. In the present case, there is no contention or evidence that the parties reached such an agreement regarding any of the costs at issue.